[Bell, et al. v. Bell, et al.]


# Bell, *et al. v.* Bell, *et al.*

### Probate Proceedings.

(Decided February 3, 1916.   Rehearing denied March 30, 1916.
71 South. 465.)

1. **Marriage; Presumption; Burden of Proof.**—Where a woman sought to show that her marriage relations with one man were void because of an alleged slave marriage with another, in view of the slave marriage law, the burden of proof to overcome the presumption of validity of the later marriage was heavy upon her.

2. **Same; Legalizing.**—The constitutional ordinances of September, 1865, legalizing marriages of freed men and women then living together as man and wife, contracted during slavery, did not legalize wrongful cohabitation, nor make marriage contracts for parties not intended by them.

3. **Appeal and Error; Dictum.**—Where the court held that a new trial should have been granted on the ground of newly discovered evidence, it was not necessary to decide as to the sufficiency of the evidence, to support the finding of the jury, and any decision thereon was dictum.

4. **Same; Review; Scope; New Trial.**—Where the appeal was from the denial of a new trial by the probate court, the circuit or Supreme Court may consider affidavits presented to the probate court on the motion for a new trial, but only for the purpose of determining whether the new trial should be granted, and not for their evidentiary weight.

5. **Same; Finding of Court.**—Where an issue is tried without a jury by the court on testimony ore tenus, the finding will not be reversed unless so manifestly against the evidence that a judge at nisi prius would set aside a verdict of the jury on the same testimony.

APPEAL from Jefferson Probate Court.

Heard before Hon. J. P. STILES.

Contest between Cornelia Bell and another, against Mary Bell, and others, over the proper disposition of an estate. Judgment for plaintiffs and defendants appeal. Reversed and remand with directions.

BONDURANT & SMITH, for appellant.   E. F. RAY, and DAVID F. ANDERSON, for appellee.

SAYRE, J.—This is the second appeal in this case.   See *Bell v. Bell,* 183 Ala. 645, 62 South. 833, where a discussion of the evidence as it then appeared may be found in the dissenting opinion of DE GRAFFENRIED, J.

[Bell, et al. v. Bell, et al.]

(1, 2) There is no reason to doubt that appellee George Bell is the natural son of Jim Bell, deceased, by the other appellee, Cornelia Bell, as now for the purpose of this case she calls herself; nor is there any need to deny that Jim, in a general way, recognized and treated George as his son. But in view of well-known conditions obtaining among negroes in the Southern States before and for some time after the conclusion of the War between the States, these facts can be of little consequence in the settlement of the issue disputed between the parties, viz., whether there was a slave marriage between Jim and Cornelia, recognized by them as an existing status on September 29, 1865. Several children were born to this couple. Of them appellee George was the eldest, and Cornelia at one place in her testimony—though this, it is conceded, is not in accord with the general drift of her deposition—fixes the date of his birth, according to the best of her recollection, at about a year after the marriage she claims to have contracted with Jim and about two years after the soldiers came back from the War. It is not disputed that a marriage between Cornelia Bell and Albert Jackson was solemnized under a license and in due form 25 years before this controversy arose, since which time she has lived with Jackson continuously as his wife, bearing to him six children; that before her marriage to Jackson she had intermarried with Nathan Oliver and had borne to him two—some of the witnesses say four—children; that Jim Bell, the distribution of whose estate is the matter in dispute, and Mary, one of the appellants, were married under a license according to the solemn form of law in 1875, more than 35 years before Jim's death in 1910, during which time they lived together as man and wife, children being born to them; and that during all this long time no question was raised as to the lawfulness of the relations assumed by these parties until the estate of Jim Bell came on for settlement and distribution. It is not necessary to deny that Jim and Cornelia cohabited in slave times in a manner somewhat like man and wife, though even this may appear to be doubtful when the approximate date fixed for the birth of George, and evidence tending to show Cornelia was of loose habits and had children before she settled down between the cold sheets of matrimony, are considered in connection with the common knowledge that sex relations lacked restraint, and births without semblance of wedlock were frequent, among slaves who knew or could do no better and had not learned the practical art of race suicide.

But however that may have been, considering the undisputed facts and the consequences to the innocent parties to these formal marriages and their offspring, appellees assumed a very heavy burden of proof when they undertook to show that the relations in which these parties have lived so long were bigamous by reason of the fact that Jim Bell and Cornelia Jackson had contracted a slave marriage and were living together, recognizing each other as man and wife (*Washington v. Washington,* 69 Ala. 281), on the 29th of September, 1865, the date of the Constitutional Ordinance, which by no means legitimized illicit relations nor imposed upon parties the burdens of contracts they had not intended to assume, but only ratified prior slave marriages between freedmen and freedwomen then living together in mutual recognition of each other as man and wife (*Moore v. Heineke,* 119 Ala. 627, 24 South. 374; *Weatherford v. Weatherford,* 20 Ala. 548, 56 Am. Dec. 206).

The evidence contained in the record before us, differing, as we think, in some material respects from that appearing upon the former appeal, has had due consideration by the entire court. Without commenting upon it more circumstantially, our judgment is that the testimony for appellees, not to consider that offered in contradiction by appellants, does not suffice to overcome the strong presumption with which the law surrounds the undisputed formal marriages between these two couples and in virtue of which they have lived together as men and wives so long that the law will exercise extreme caution in disturbing the veil that time has drawn over their ancient relations to found a decree and a new status of social relations and property rights on the frail memory or recently stimulated imagination of ignorant witnesses, who for the lifetime of a generation have never had occasion to give the matter a thought. Upon this conclusion, the decree of the probate court will be reversed, and the case remanded, with direction that a decree be entered distributing the estate of Jim Bell, deceased, among appellants as his surviving widow and child, to the exclusion of appellees.

Reversed and remanded.

All the Justices concur, except GARDNER, J., not sitting.

### IN RESPONSE TO APPLICATION FOR REHEARING.

SAYRE, J.—Counsel for appellant insist that the holding on this appeal is diametrically opposed to the ruling and opinion of

[Bell, et al. v. Bell, et al.]

the majority on the former appeal reported in 183 Ala. 645, 62 South. 833.

(3) On the face of the reports of the two appeals this contention would appear to be true; and we therefore deem it proper, if not necessary, to explain the holding in the two cases and the opinion of the majority on the former appeal.

In the first place, what was said in the opinion of the majority as to the sufficiency of the evidence before the probate judge to support his finding was dictum, for the reason that we held that he should have granted a motion for a new trial on the ground of newly discovered evidence. It was therefore unnecessary to decide as to the correctness of the judgment which we held should have been set aside, and which was set aside, and a new trial ordered. The appeals are materially different; the former appeal to this court was not from the probate court, as was this appeal, but was from the circuit court. We were there reviewing the judgment of the circuit court, and not that of the probate court.

(4) The holding on the first appeal was necessarily a holding to the effect that, if the evidence on another trial should be the same in effect as that indicated by the affidavits for a new trial, the judgment of the probate court should and would be different. Neither the circuit court nor this court could consider the affidavits, except for the purpose of saying whether or not the probate court should have awarded a new trial. These affidavits were not before the probate judge when he rendered his first decree declaring George Bell and Cornelia Jackson the lawful heirs of Jim Bell. The affidavits first appeared in the probate court in support of a motion to set aside the judgment theretofore rendered. For that reason the circuit court could not or should not have considered them except to review the action of the probate court in awarding a new trial.

On this appeal, however, the substance of these affidavits, which are numerous and extensive, was put in evidence before the probate court; and he considered them, or should have considered them, in rendering the decree appealed from. Hence the evidence is materially different, both in kind and in quantity, from that adduced in support of the final decree rendered by the probate court, which this court, on the former appeal, ordered to be set aside, and which was accordingly set aside, and a new trial awarded.

(5)  This court still adheres to the correctness and soundness of the rule announced in *Nooe's Case,* 70 Ala. 446, and which was quoted and followed on the former appeal, to the effect that: "When the law authorizes the disputed question to be tried, and it is tried, by the court without a jury, on testimony given viva voce in the presence of the court,   *   *   *   the rule is, not to reverse the finding, unless it is so manifestly against the evidence that a judge at nisi prius would set aside the verdict of a jury, rendered on the same testimony."

We now recognize and follow that rule, after a careful examination of the evidence as shown by the record on this appeal, which, as we have shown above, is very different from that on the first appeal, except that which appeared only in support of the motion for a new trial, and which we then held was sufficient to entitle these appellees to a new trial.  The holdings of the majority, in the two cases, are not therefore inconsistent, though the results are entirely different owing to the fact that the evidence before the probate court, on the two trials, was materially different.   In other words, if the evidence on this appeal were not different from that on the other appeal, we are not prepared to say that the result would be different.   It is therefore the difference between the evidence on the two trials which leads the majority to a different result from that attained on the first appeal.