(114 So. 892)

## FUQUAY v. STATE.   (5 Div. 625.)

Court of Appeals of Alabama.   Jan. 11, 1927.

Rehearing Granted March 29, 1927.   Rehearing Denied April 19, 1927.   Affirmed on Mandate Oct. 4, 1927.

Further Rehearing Denied Nov. 8, 1927.

Horace C. Wilkinson, of Birmingham, for appellant.

Charlie C. McCall, Atty. Gen., and W. M. Rayburn, Asst. Atty. Gen., for the State.

BRICKEN, P. J. The opinion rendered in this case on January 11, 1927, by this court (through SAMFORD, J.) is withdrawn, and the order of affirmance is annulled. The application for rehearing is granted, and this opinion is substituted. SAMFORD, J., differs from the majority and expresses his views in a dissenting opinion following hereto.

The facts in this case are without dispute. This appellant lived with a woman by the name of Gussie Harvey for a number of years. There is some slight evidence that they claimed to be man and wife, and that they had children. Whether these children were ever recognized by appellant as his, the record is silent. Appellant and said Gussie Harvey separated. The reason and cause of the separation is not disclosed by the record. Subsequently and shortly after the separation, the appellant procured a license and was married in solemn ceremonial form to Mattie Lou Davis. There is some evidence that Gussie Harvey was living at the time the marriage with Mattie Lou Davis was solemnized. There is no evidence showing or tending to show how or why the relation between appellant and Gussie Harvey was dissolved. A divorce is not mentioned or alluded to. The appellant was indicted for bigamy. The question is, On the facts stated, is there any evidence on which a verdict of guilty could be predicated?

The law of this state recognizes a common-law marriage, but there can be no marriage without mutual consent of parties. Cohabitation and repute do not make marriage, but cohabitation as man and wife, the rearing of children, and recognition of the relation by the parties themselves, are manifestations of the parties having consented to contract that relation inter se, and, therefore, circumstances from which the trior of fact may infer that a marriage had in fact been entered into. Those things, cohabitation, repute, etc., are just that and no more. They are circumstances which, unexplained, authorize a mere inference that a marriage had in fact been entered into; that is to say, they authorize that inference, in contradistinction to the idea that they raise a presumption or compel or require such a conclusion. They do not compel or require, neither does the law compel or require, the trior of fact to come to that conclusion, even if they stand unexplained and remain unaffected by any other presumption of law or of fact.

The appellant entered in this trial with two presumptions in his favor: (1) The presumption of innocence, one of the strongest presumptions known to the law. It is a presumption of fact that the law makes, and, as a presumption of fact, it is evidence in his behalf, and remains in the case until his guilt is by the evidence established beyond a reasonable doubt. (2) The presumption of validity in favor of the last marriage which was solemnized according to the ceremony recognized by law. The presumption with which the law surrounds the undisputed formal marriage has been characterized by our Supreme Court as "the strong presumption." Bell v. Bell, 196 Ala. 465, 71 So. 465, and well it may be so referred to. The presumption is evidence. The law will not presume that a man will procure a license and go through the solemn ceremony prescribed by law for a formal marriage, in the presence of witnesses and before an officer recognized by law, knowing that those facts are to be recorded in solemn form and perpetuated as long as the power of the state is sufficient to preserve its records, unless he and the other party to the relation are legally qualified to assume the status of man and wife. The fact that parties enter into a formal marriage is some proof that there was no legal obstacle in the way of the marriage, sufficient in itself to cast the burden on any one attacking the relation, of showing by evidence, as distinguished from inference, that the marriage was void instead of valid. There is no presumption against the validity of a formal marriage. Every presumption is in favor of its validity. There is no presumption in favor of a common-law marriage. The most that the law attempts to do is to authorize, as distinguished from require, the trior of

fact to infer that a marriage had in fact been entered into from a set of unexplained circumstances, such as cohabitation, repute, recognition, etc. In the case of a formal marriage, there is a presumption of fact that it was a valid marriage, and it takes evidence to overturn that presumption of fact.

In the case of a common-law marriage, there is no presumption of fact, but authority for an inference, at the option of the trior of fact, that a certain fact, to wit, a marriage, existed. There is a considerable difference between a presumption of fact and an optional inference, and we know of no authority that in anywise holds that an optional inference is ever sufficient to overturn or destroy a presumption of fact.

It has long been a maxim of law that "a fact is not proven by circumstances which are merely consistent with its existence." Duncan v. C., R. I. & P. R. Co., 82 Kan. 230, 108 P. 101.

The law is that such evidence (circumstantial) is always insufficient, where, assuming all to be proved which the evidence tends to prove, some other hypothesis may still be true, for it is the actual exclusion of every other hypothesis which invests mere circumstances with the form of proof. 1 Starkie, Ev. 444. And in our own Supreme Court in the case of Miller Brent Lumber Co. v. Douglas, 167 Ala. 286, 52 So. 414, the court said:

"The possibility that a thing may occur is not alone, under any fair, reasonable deduction, evidence, even circumstantial, that the thing did in fact occur."

The Iowa court has very clearly expressed the same idea in the following language:

" 'It has been found to be a wise and safe rule to require circumstantial evidence to go so close to the fact to be proved that it must be the immediate and direct inference therefrom. Any other rule would result in great uncertainty. If the ultimate fact should be drawn from intervening inferential facts, the probability of its correctness would be much weakened. It would be a probability based upon a probability. The law will not tolerate such uncertainty.' * * * It is a general rule, in determining whether the circumstances relied upon furnish any evidence whatever of the conclusion sought to be drawn therefrom, that the facts which the evidence tends to establish must be of such nature and so related to each other that the conclusion is the only one that can fairly or reasonably be so drawn. It is not sufficient that they are consistent with such conclusion, if they are equally consistent with some other conclusion." Klumb v. Iowa State Traveling Men's Association, 141 Iowa, 519, 120 N. W. 81.

These rules have been referred to because of their peculiar application to the facts of the instant case.

That the last marriage was solemnized in the manner and form prescribed by law is established beyond controversy. A strong presumption immediately arises in favor of its validity. The state challenges its validity, and says it was bigamous. To support its contention, it offered some slight proof of a set of circumstances consisting of cohabitation, repute, recognition, and the rearing of children, and it asks the court to say these are sufficient to authorize a jury to find that the last marriage was invalid, thus asking the court to hold that the jury had a right to infer a common-law marriage from these facts, notwithstanding the failure of the record to disclose whether it was or was not dissolved, even if it was ever consummated.

The reason why the court should decline to do this is that this set of circumstances, when standing alone, show no more than a mere possibility or conjecture that appellant and Gussie Harvey agreed to be man and wife, and, when confronted by the presumption of validity arising from a formal ceremonial marriage, they are so weak and inconclusive as that they do not amount to any evidence whatever of the conclusion sought to be drawn therefrom. They may be consistent with that conclusion, but they are equally consistent with a contrary conclusion and equally consistent with the conclusion that the common-law marriage, if it be conceded that one was consummated, had been dissolved by divorce. There is a rule of law universally recognized to the effect that:

"A theory cannot be said to be established by circumstantial evidence, even in a civil action, unless the facts relied upon are of such a nature, and are so related to each other, that it is the only conclusion that can fairly or reasonably be drawn from them." Asbach v. Chicago, etc., Ry. Co., 74 Iowa, 248, 37 N. W. 182.

Given the facts of two marriages, without any evidence regarding the dissolution of the first, the trior of fact cannot go beyond the presumption in favor of the last marriage. It is a case where the law casts on the assailant of the last marriage the onus of proving its invalidity. This he cannot do by simply showing a prior marriage and stopping there. If he chooses to stop there, then there is a failure of proof of invalidity, and the presumption of validity steps in and settles the issue in favor of the last marriage. U. S. v. Green (C. C.) 98 F. 63.

In the case of Weatherford v. Weatherford, 20 Ala. 548, 56 Am. Dec. 206 (fourth headnote), it is said:

"The presumption of an actual marriage arising from the fact of cohabitation may be rebutted, by proof of a subsequent permanent separation between the parties, without any apparent cause, and the marriage of one of them soon afterwards."

In McLaughlin v. McLaughlin, 201 Ala. 482, 78 So. 388, the court, through Mr. Justice Sayre, said:

"By her second marriage with appellant, appellee destroyed the evidential value of her

previous relation with Moore. The weight of authority, and the decisions of this court support the proposition that the presumption of an actual marriage from the fact of continued cohabitation, etc., is rebutted by the fact of a subsequent permanent separation, without apparent cause, and the actual marriage soon after of one of the parties."

In the case at bar, where the evidence for the state disclosed a formal marriage between appellant and Mattie Lou Davis, that fact excluded the possibility of a finding (from the circumstances shown, such as cohabitation, repute, etc.) that he at any time intended, bona fide, to become the lawful husband of Gussie Harvey. It required more proof than those facts to make it possible for a jury to legally infer that he intended to become the husband of Gussie Harvey. The second marriage destroyed the evidential value of the evidence tending to show his previous relations with Gussie Harvey. The evidence was still in the case, but by operation of law it was rendered impotent to support an inference that appellant and Gussie Harvey had agreed to be man and wife. There was no evidence adduced upon this trial, nor did the state attempt to prove, that appellant and Gussie Harvey ever agreed to be man and wife. As stated, the evidence rested in slight inference, only, and under the law this was destroyed by proof of the formal marriage with Mattie Lou Davis. In other words, to use the language of the eminent Chief Justice in the case of Moore v. Heineke, 119 Ala. 627, 24 So. 374, it was not "sufficiently strong and satisfactory" from which the jury might infer an agreement between appellant and Gussie Harvey to become man and wife.

In the case of Young v. Woodward Iron Co., 211 Ala. 508, 101 So. 51, the court recognizes and applies the rule announced in the McLaughlin Case, supra, to a state of facts even stronger than the undisputed facts in the case at bar. In the Young Case, a woman by the name of Luvenia Threadgill married Will Bolling in 1900. Bolling died in 1921. In 1905, this same Luvenia married Rich Young. In 1921, Rich Young married Lela B. Young. Luvenia testified that she did not know anything about any divorce from any of her husbands. On this showing the trial court held the marriage between Rich Young and Lela B. Young invalid; that Rich and Luvenia had not been divorced; that Lela was not the widow of Rich, and denied her the compensation payable to his widow under the Compensation Law. Somerville, J., speaking for the court, quoted with approval the rule stated by Judge Freeman:

"If it is shown that a party to a marriage has contracted a previous marriage, and that his or her former spouse is still living, this has been held not to destroy the prima facie validity of the second marriage. In such a case it has been presumed that the first marriage has been dissolved by divorce, and that the burden to show that it has not rests on the person seeking to impeach the last marriage, notwithstanding he is thereby required to prove a negative. Here the presumption of the continuance of the first marriage is made to yield to the presumption in favor of the validity of the second marriage and of the innocence of the parties to it."

After applying the rule to the facts in the case, the court concluded as follows:

"Our conclusion is that the finding of fact in favor of the status of marriage and nondivorce between Rich Young and Luvenia is not supported by any evidence, when all the evidence and the legal presumptions are properly understood and applied."

The ruling of the trial court was reversed.

When all the evidence in the case at bar is considered, along with the evidence of the last marriage, formal and in solemn ceremonial prescribed by law, there is no evidence from which a jury might lawfully infer that appellant and Gussie Harvey agreed to be man and wife, for, as stated, there was no evidence to this effect, and, if they did so infer, they would, under the law, be obliged to presume that the status was dissolved in the manner and form prescribed.

The presumption of innocence is one of the strongest presumptions known to the law. The presumption in favor of the validity of the last marriage is likewise a very strong presumption, and in each instance that this question has been before an English speaking court it has been uniformly ruled that the presumption of innocence and the presumption in favor of the validity of the second marriage, as a matter of law outweighs any inference or presumption arising from the facts of cohabitation and reputation, etc.

In Doe ex dem. Wheeler v. McWilliams, 2 U. C. Q. B. 77, and the subsequent appeal (3 U. C. Q. B. 165), a marriage in fact had been proven; the court ruled that evidence of cohabitation and reputation was not enough to establish a prior marriage; the presumption of marriage arising from such facts being much less strong to support the marriage than the presumption arising from the second marriage.

In Jones v. Jones, 48 Md. 391, 30 Am. Rep. 466, it is said that, where the presumption of a lawful marriage founded simply upon habit and repute, is met by the counter presumption of innocence, the former must give way, and the law then requires that the first alleged marriage as an actual fact shall be established by more direct proof.

In Waddingham v. Waddingham, 21 Mo. App. 609, the court ruled, that, to defeat a marriage where the ceremony has been shown to have taken place, on the ground that one of the parties had contracted a marriage with another person who was still living, there must be actual, as distinguished from presumptive, proof of the first marriage, and

for that purpose proof of cohabitation is not sufficient.

In a case from New York, in which many of the presumptions flowing from marriage are discussed, it is said. that the law will presume, for the purpose of sustaining a second marriage, that one of the parties to the former marriage was not competent to marry, and that the former marriage was void. Price v. Tompkins (Sup.) 171 N. Y. S. 864, affirmed Id. (Sup.) 172 N. Y. S. 915. This last authority is referred to because there is no evidence in the record regarding Gussie Harvey's capacity to marry.

There is an interesting and instructive note in Howard v. Kelly, a Mississippi case, in Ann. Cas. 1918E, beginning at page 1234. The annotaters state the following to be the rule, and cite a large number of cases in many jurisdictions in support of the statement:

"Whenever a marriage has been established, there is a presumption in favor of its validity which will not be overthrown by proof of a prior marriage; the presumption of innocence overcoming the presumption of the validity and continued existence of the prior marriage."

■ In addition to the general affirmative charge, appellant requested four charges in writing, which were refused by the trial court. One is an unnumbered charge, and reads as follows:

"The court instructs you, gentlemen of the jury, that, when two successive marriages are shown to have been consummated by the same person, the law presumes that the second or latter marriage is legal until it is shown by the evidence, beyond all reasonable doubt, that it is illegal."

This charge, it clearly appears, is supported by the authorities above referred to, and its refusal was therefore error.

■ The other refused charges are numbered 5, 7, and 10. These charges appear to have been drafted in strict accordance with the rule announced in the authorities commented on in this opinion. They are not covered by the oral charge of the court or any written charges given at the request of the appellant; the refusal of each of these charges constituted reversible error.

Under the facts of this case, we are of the opinion that the general affirmative charge requested in writing by the appellant should have been given.

Reversed and remanded.

SAMFORD, J. (dissenting). The case as made by the state is: The defendant lived with a woman whose maiden name was Harvey for some eight years, and claimed to be husband and wife, and then separated and remained separated for two years and eight months, after which the defendant contracted a ceremonial marriage with Mattie Lou Davis, and lived with her some six weeks. The sole and only witness to the first alleged marriage was a man named Fuqua, a brother of defendant, whose testimony concretely stated:

"When I say they married, I mean they lived together for some eight years and claimed to be husband and wife, and then they separated."

The first woman was living at the time of the ceremonial marriage to Mattie Lou. At the conclusion of the evidence, the court ex mero motu said:

"I will also exclude the testimony of the witness Fuqua that this defendant and Gussie Harvey were married."

This left the testimony of Fuqua to the effect that defendant and Gussie had lived together for a period of eight years, claiming to be husband and wife, had children borne to them, and then separated. The burden was on the state to prove the first marriage beyond a reasonable doubt, and this question was submitted to the jury upon the theory and under a charge that the evidence was sufficient, if believed beyond a reasonable doubt to establish this first relationship as a common-law marriage.

In this state marriage is a solemn contract entered into between parties authorized to contract in that regard, that they will live together in a state of matrimony, assuming all the obligations fixed and required by law for such a state. And while such contracts are not loosely to be assumed, and the practice in this commonwealth is to surround the marriage contract with the most solemn ceremonies of both church and state, this state has, and still does, recognize as valid and binding what is known and called a common-law marriage; that is, where it is made to appear by the evidence that the parties entered into a mutual agreement to live as man and wife, provided the parties are capable of making such contract. White v. Hill, 176 Ala. 480, 58 So. 444; Wall v. Williams, 11 Ala. 826.

In some cases it is held that, before an agreement such as is hereinabove described can become a valid marriage, it must appear from the evidence that the parties were qualified under the law to contract marriage. White v. Hill, supra. But, where the celebration of the marriage was by legal ceremony, the contract of marriage, the capacity of the parties, and every other fact necessary to its validity will be presumed until the contrary is shown. 3 R. C. L. p. 609, par. 24. And a common-law marriage may be proven by reputation, combined with the birth of children, living together, and admissions before the world of the marriage state. Dumas v. State, 14 Tex. App. 464, 46 Am. Rep. 241; Bynon v. State, 117 Ala. 80, 23 So. 640, 67 Am. St. Rep. 163; 3 R. C. L. p. 809, par. 23.

It is insisted that:

"When the same evidence that showed the set of circumstances authorizing a finding by the jury that a former marriage had been contracted so as to be binding as a common-law marriage also disclosed that the parties separated and the cause of the separation was not disclosed or explained, and that the defendant subsequently contracted a ceremonial marriage, that this latter fact, as a matter of law, destroyed the presumption or inference arising from the facts from which otherwise a common-law marriage might be inferred."

By a long line of decisions, beginning with Beggs v. State, 55 Ala. 108, this state has recognized common-law marriages, notwithstanding the several statutes placing restrictions upon ceremonial marriages. To constitute such a marriage, it is only necessary that there shall exist a mutual consent or agreement between the parties to be husband and wife, followed by cohabitation and living together as husband and wife. Tartt v. Negus, 127 Ala. 308, 28 So. 713; Herd v. Herd, 194 Ala. 613, 69 So. 885, L. R. A. 1916B, 1243.

A common-law marriage may be proven by facts and circumstances tending to prove an agreement to live together as husband and wife, followed by cohabitation, and, when established, the status becomes fixed and the marriage is valid, as if the same had been ceremonially entered into. Farley v. Farley, 94 Ala. 501, 10 So. 646, 33 Am. St. Rep. 141. But where the facts tending to prove the common-law marriage also show a subsequent permanent separation, without apparent cause, and the marriage of one of the parties soon after, by a ceremonial marriage, it seems to be the law supported by the decisions that the presumption of an actual marriage from continued cohabitation, etc., is rebutted by the fact of a subsequent permanent separation, without apparent cause and the ceremonial marriage soon after of one of the parties. The foregoing finds support in Weatherford v. Weatherford, 20 Ala. 548, 56 Am. Dec. 206, Moore v. Heineke, 119 Ala. 627, 24 So. 374, McLaughlin v. McLaughlin, 201 Ala. 483, 78 So. 388, and many other authorities from other states. But the proposition that, because the presumption arising from such facts is rebutted, the evidence of these facts is no longer entitled to any consideration, and must be withdrawn from the jury, cannot be sustained. Even though the presumption be withdrawn, the facts and circumstances are still in evidence tending to establish a marriage contract, and from which the jury is authorized to find, either that a marriage ceremony had been in fact performed, or that the parties had agreed to a common-law marriage contract. The foregoing is upheld by the opinion in Moore v. Heineke, 119 Ala. 627, 637, 24 So. 374.

We have carefully read the case of Young v. Woodward Iron Co., 211 Ala. 508, 101 So.

51, and the other authorities cited in appellant's brief. We are frank to say that some of these seem to be at variance with the above, but we are not willing to hold with them that the defendant by his own act can destroy the evidential value of facts tending to fix a status. The opinion in the case of McLaughlin v. McLaughlin, 201 Ala. 482, 78 So. 388, contains some expressions which seem to be at variance with holdings herein that the opinion quotes, with approval an excerpt from the opinion in Moore v. Heineke, 119 Ala. 627, 24 So. 374, and omits that part of the opinion which holds that, notwithstanding the legal presumptions, the question yet remains for the jury. It may be that these two opinions can be reconciled, or at least limited so as to remove the apparent conflict. See, also, Langtry v. State, 30 Ala. 536; Bynon v. State, 117 Ala. 80, 23 So. 640, 67 Am. St. Rep. 163; Parker v. State, 77 Ala. 47, 54 Am. Rep. 43; Williams v. State, 151 Ala. 108, 44 So. 57. Especial attention is directed to the opinion in Williams v. State, 151 Ala. 108, 111, 112, 44 So. 57, where the court said:

"It was also held in that case [Moore v. Heineke] that the presumption of an actual former marriage, arising from the fact, of continual cohabitation, etc., is rebutted by the fact of a subsequent permanent separation, without apparent cause, and the actual marriage, soon after of one of the parties. But it was further said: 'Notwithstanding such evidence has been deprived of any aid from the presumption, it is still evidence tending to show, and from which the jury may infer, if it be sufficiently strong and satisfactory, either an actual ceremonial marriage, or an actual consent or agreement to be man and wife, which, when followed by cohabitation, may constitute a valid common-law marriage. * * * This court has many times held that in criminal prosecutions for bigamy—an offense of which an actual second marriage is an essential ingredient, and where every legal presumption of the innocence of the accused in contradicting the second marriage is indulged—the first marriage may be proved by evidence of the former cohabitation of the accused with a third person, and of his declarations.' "

Where there is evidence sufficient to warrant the jury in its findings that there was a common-law marriage, and they so find from the evidence, a valid marriage is established, and it then becomes necessary for the defendant to introduce evidence which from the whole testimony will create a reasonable doubt of the validity of such first marriage. It is not necessary in such a case to go farther and show that the parties were competent to contract. 3 R. C. L. p. 810, note 11.

Even if Act 1919, p. 169, has the effect of changing the rule as to common-law marriages in this state, that fact cannot avail the defendant. The status of marriage between defendant and Gussie Harvey became fixed before the enactment of this statute. More-

over, we do not think this statute changes the rule as to common-law marriages. Whatever ought to have been the rule, we have now gone too far to turn back. Too many marital and property rights rest upon the decisions holding common-law marriages to be valid.

Refused charge 8 is elliptical.

Refused charge 7 is misleading, and was properly refused.

I think the judgment should be affirmed.

PER CURIAM. Affirmed on authority of Fuquay v. State, 217 Ala. 4, 114 So. 898.