PATTERSON, Judge.
The appellant, Shirley Mae Ruffin, was indicted and convicted of the offense of *64 robbery, as proscribed by § 13A-8-41(a), Code of Alabama 1975. She was subsequently sentenced to twenty-four years’ imprisonment, ordered to pay restitution in the amount of $2,400 to the victim, and ordered to pay a victim’s compensation assessment of $25 and costs of court.
The prosecution’s main witness was the victim, Curtis Herring, who had 1983 convictions for the sales of talwin and prelu-dins, a federal conviction for an unregistered firearm, and a 1983 conviction for theft. He testified to the following. He had known Ruffin since 1982, and they had been dating for approximately five months prior to the robbery. He also knew her brother, Johnny Overstreet. On several occasions, Herring had given Ruffin money to pay her bills. On September 13, 1985, she called Herring at his brother’s house and asked if her mother could borrow fifteen dollars. Herring answered affirmatively, and she hung up without telling Herring what to do with the fifteen dollars. So, he called her back and asked whether she wanted him to take the money to her house or to her mother’s house. She replied that he was to take it to neither, but to meet Overstreet and her on a “little dirt road out of the [Alabama] Village,” where she lived.
Herring left immediately. He had approximately $2,400 in his possession. When he turned onto the dirt road, the car which Ruffin and Overstreet were in pulled past Herring’s car and went to the end of the road. Herring turned his car around and drove back to meet them. Then, the following occurred (as told by Herring):
“So [Ruffin] come over and got in the car with me. So I done had the fifteen dollars sticking in my shirt pocket. So I just handed it to her. And she sat there just a few seconds and said, this ain’t going to work. So I backed up and pulled up aside the car that her brother was in. I said, well, hand him — give him the money. Let him take the money. She said, here’s that package for mother. You could tell something was going on wrong.”
Up to that point, Herring had seen no one else or any other car in the vicinity. But, just as Ruffin was handing the money to Overstreet, two men approached the cars from behind. Herring cautiously pulled his car up about fifty feet. Ruffin got mad at Herring for pulling off while she was talking to Overstreet. Herring explained that he did not know who the two men were. Ruffin then got out of Herring’s car and walked back to the car where Overstreet and the two men were and talked to them two or three minutes. Then, she walked back to Herring’s car and told Herring, “Oh, that’s old Pete, lives over there on Marengo Drive. He’s needing a jump off.” (Herring knew that the house that Ruffin described as Pete’s residence was, in fact, a house where her sister had once lived.) Herring replied that he had no jumper cables and that he was not giving anyone he did not know a “jump off” at that time of night. Then, Herring left, circled the block, and returned. Ruffin was still standing in the middle of the street, so Herring stopped and asked her what was going on. She replied by pointing to the two men’s car, a maroon colored Ford Tori-no, and saying, “That’s the car that needs jumping off.” Herring drove approximately a hundred feet past the car and parked under a street light. He got his jumper cables, gave them to Ruffin, and told her that the car that Overstreet and she were in could be used to “jump off” the car. She took the jumper cables back to the allegedly disabled car, stayed several minutes, and returned to tell Herring that he would have to “jump off” the car because Overstreet’s and her car was running hot.
Herring drove his car back to the location where the strangers’ car was parked. However, he noticed only one of the men standing there. From inside his car, Herring pulled his hood latch, but the stranger acted like he could not raise the hood. So, Herring got out of his car, and as he was about to raise the hood, the other man (who he later learned went by the name “Willie Williams”) put a knife in his side and told him to be cool. This man also took Herring’s billfold and, then, told his companion, “Let’s go.” Then, the two robbers left in *65 the car that they had claimed to be disabled.
While the robbery was in progress, Ruf-fin and Overstreet, along with a white man who lived nearby, were walking toward the three men. They had been at Ruffin’s and Overstreet’s ear, which was parked behind Herring’s, and Overstreet “had been putting water into something or other.” Over-street asked, “Hey, what’s happening?” and Herring replied, “You mean you can’t see what’s happening.” Neither Over-street nor Ruffin said anything else.
After the two robbers left, Herring followed them, and when he caught up with them, he rammed their car in an attempt to disable it so he would have time to summon the police. He thought he had, in fact, disabled the car, so he left to call the police. As he was trying to find a phone, he saw the maroon Torino drive by. By the time he had returned to the robbery scene to find a nearby phone, Ruffin and Overstreet had disappeared. He did not see Ruffin again that night.
Herring then reported the robbery to the police that same night. During the following two days, Saturday and Sunday, he drove around, looking for the wrecked maroon Torino. He finally located it Sunday night, about three blocks from the robbery scene, and reported its license number to the police.
The prosecutor also introduced testimony that the maroon Torino which was used by the robbers was stolen.
Finally, the prosecutor introduced the written statement of Ruffin, wherein she stated the following. “The dude” asked her for a “jump off,” but she told him that she could not help him because her car was running hot. It had a hole in its radiator, so she asked a man who lived nearby for some water. After he brought a hose across the fence and let Overstreet and Ruffin have water for their car, “the dude” walked up to her from the corner and asked for a “jump off” again. Overstreet and she were still putting water in the car and she again told him that their car was running hot. She then told Herring to “jump this man off so he can go ahead on.” So, Herring drove his car over to the disabled car. “The dude” could not raise Herring’s car’s hood, so Herring got out and raised it. Either “the dude” or another “dude” who had crossed the street “stuck” Herring in his back and took his billfold. She stated, “You come and ask for a jump off and you pull some shit like this.” The other man said, “Shut up, bitch.” Then, one of the robbers held Herriñg and her while the other one started their car. Then, the one watching them jumped into the car, and the two left. Herring left, and she called the police.
In her statement, Ruffin also claimed that she did not know Willie Williams, but when she was shown a photograph of him, she remembered that she had seen him when she was a student at Blount High School in 1974.
At the conclusion of this testimony, defense counsel moved for a dismissal on the alleged lack of evidence showing a connection between Ruffin and the robbers. The trial court denied this motion. On appeal, Ruffin claims that this ruling was erroneous.
Because of the circumstantial nature of the prosecution’s evidence, we note our recognition of the following:
“An abundance of decisions exists on the extent to which circumstantial evidence may support a finding of guilt, and the general legal requirement has been repeated frequently, although not always in the same terms. These requirements have preserved the force of circumstantial evidence to support a finding of guilt if ‘the evidence is so strong and cogent as to show defendant’s guilt to a moral certainty,’ Tanner v. State, 291 Ala. 70, 277 So.2d 885 (1973); Gantt v. State, 356 So.2d 707 (Ala.Crim.App.), cert. denied, 356 So.2d 712 (Ala.1978), and the circumstances producing the moral certainty of the accused’s guilt ‘are incapable of explanation on any reasonable hypothesis.’ Jarrell v. State, 255 Ala. 128, 50 So.2d 774 (1949); Sumeral v. State, 39 Ala. App. 638, 106 So.2d 270 (1958).”
Ex parte Williams, 468 So.2d 99, 101 (Ala.1985). While we adhere to the fundamen *66 tal principle that circumstantial evidence is entitled to the same weight as direct evidence, Andrews v. State, 437 So.2d 661 (Ala.Cr.App.1983), we have reviewed only the evidence before the trial court at the time the motion was made, as set out above, in the light most favorable to the State, and hold that it does not meet the applicable standard of review; the legal evidence presented was insufficient for the jury, by fair inference, to find Ruffin guilty beyond a reasonable doubt. Thomas v. State, 363 So.2d 1020, 1022 (Ala.Cr.App.1978). We have reached this holding by applying the following principles to the facts of this case:
“The test to be applied [in reviewing a conviction based on circumstantial evidence] is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. United States v. Black, 497 F.2d 1039 (5th Cir.1974); United States v. McGlamory, 441 F.2d 130 (5th Cir.1971); Clark v. United States, 293 F.2d 445 (5th Cir.1961)....
“... [Circumstantial evidence justifies a conviction only when it is inconsistent with any reasonable theory of innocence.
‘The humane provisions of the law are, that a prisoner, charged with a felony, should not be convicted on circumstantial evidence, unless it shows by a full measure of proof that the defendant is guilty. Such proof is always insufficient, unless it excludes, to a moral certainty, every other reasonable hypothesis, but that of the guilt of the accused. No matter how strong the circumstances, if they can be reconciled with the theory that some other person may have done the act, then the defendant is not shown to be guilty, by that full measure of proof which the law requires.’ Ex parte Acree, 63 Ala. 234 (1879).
“Guilt is not established by circumstantial evidence unless the facts relied on are such that it is the only conclusion fairly to be drawn from them. Fuquay v. State, 22 Ala.App. 243, 114 So. 892 (1927). If all the material circumstances in evidence point to guilt and exclude any reasonable hypothesis except that of guilt a conviction is warranted. Pruett v. State, 33 Ala.App. 491, 495, 35 So.2d 115 (1948).
“However ‘it is not every hypothesis, but every reasonable hypothesis but that of guilt, that the circumstantial evidence must exclude.’ 23 C.J.S. Criminal Law § 907 (1961).
‘(T)he true test of the sufficiency of circumstantial evidence to justify a conviction is whether the circumstances as proved produce a moral conviction to the exclusion of every reasonable doubt. It is not necessary for the circumstances to be “such as are absolutely .incompatible, upon any reasonable hypothesis, with the innocence of the accused.” Bland v. State, 75 Ala. 574; Banks v. State, 72 Ala. 522; Matthews v. State, 55 Ala. 65. Mitchell v. State, 114 Ala. 1, 6, 22 So. 71, 72 (1897).”
Cumbo v. State, 368 So.2d 871, 874-75 (Ala.Cr.App.1978), cert. denied, 368 So.2d 877 (Ala.1979).
We can not hold that the jury could have reasonably concluded that the evidence excluded every reasonable hypothesis except that of guilt; the evidence is not “so strong and cogent as to show defendant’s guilt to a moral certainty.”
“While a jury is under a duty to draw whatever permissible inferences it may from the evidence, including circumstantial evidence, mere speculation, conjecture, or surmise that the accused is guilty of the offense charged does not authorize a conviction. Smith v. State, 345 So.2d 325 (Ala.Cr.App.), cert. quashed, 345 So.2d 329 (Ala.1977); Colley v. State, 41 Ala.App. 275, 128 So.2d 525 (1961). A defendant should not be convicted on mere suspicion or out of fear that he might have committed the crime. Harnage v. State, 49 Ala.App. 563, 274 So.2d 333 (1972). While reasonable inferences from the evidence may furnish a basis for proof beyond a rea *67 sonable doubt, Royals v. State, 36 Ala. App. 11, 56 So.2d 363, cert. denied, 256 Ala. 390, 56 So.2d 368 (1951), mere possibility, suspicion, or guesswork, no matter how strong, will not overturn the presumption of innocence. Sauls v. State, 29 Ala.App. 587, 199 So. 254 (1940); Riley v. State, 28 Ala.App. 389, 187 So. 247 (1938); Rungan v. State, 25 Ala.App. 287, 145 So. 171 (1932); Guin v. State, 19 Ala.App. 67, 94 So. 788 (1922).
“An inference is merely a permissible deduction from the proven facts which the jury may accept or reject or give such probative value to as it wishes. Roberts v. State, 346 So.2d 473 (Ala.Cr. App.), cert. denied, 346 So.2d 478 (Ala.1978); Hale v. State, 45 Ala.App. 97, 225 So.2d 787, cert. denied, 284 Ala. 730, 225 So.2d 790 (1969); Orr v. State, 32 Ala. App. 77, 21 So.2d 574 (1945). It is a logical and reasonable deduction from the evidence and is not supposition or conjecture. Guesswork is not a substitute. Stambaugh v. Hayes, 44 N.M. 443, 103 P.2d 640 (1940); Bolt v. Davis, 70 N.M. 449, 374 P.2d 648 (1962). A supposition is a conjecture based on the possibility or probability that a thing could have or may have occurred without proof that it did occur. Louisville & N.R. Co. v. Mann’s Adm’r, 227 Ky. 399,13 S.W.2d 257 (1929). The possibility that a thing may occur is not alone evidence, even circumstantially, that the thing did occur. Parker v. State, 280 Ala. 685, 198 So.2d 261 (1967); Miller-Brent Lumber Co. v. Douglas, 167 Ala. 286, 52 So. 414 (1910).”
Thomas, 363 So.2d at 1022-23. See also Weathers v. State, 439 So.2d 1311 (Ala.Cr. App.1983).
The fact that at the time of the commission of the robbery, Ruffin and the two robbers were together does not, in conjunction with the other facts and circumstances, sufficiently tend to connect Ruffin with the commission of the robbery. See Dolvin v. State, 391 So.2d 133 (Ala.1980). The only facts even slightly pointing to Ruffin’s participation in the robbery are, as follows: Ruffin specified the place for Herring to meet her, which happened to be the location of the subsequent robbery; when Herring handed her the fifteen dollars, she made the rather enigmatic statements, “[T]his ain’t going to work,” and “[Hjere’s that package for mother”; as Ruffin was handing the money to her brother, two strangers approached; and, after Ruffin talked to the two for several minutes, she obtained Herring’s assistance in helping the men start their car. These facts alone fail to afford the legal inference that Ruf-fin was a participant. “While such circumstances do raise a suspicion that the defendant might be involved in the crime, they alone afford no circumstantial evidence of involvement or participation but only tend to support the possibility.” Thomas, 363 So.2d at 1023. Since the evidence created merely a suspicion of guilt and is thus wholly insufficient to support a conviction, this cause is reversed and judgment rendered for the defendant.
REVERSED AND JUDGMENT RENDERED.
BOWEN, P.J., and TYSON and TAYLOR, JJ., concur;
McMILLAN, J., dissents with opinion.