TYSON, Judge.
On May 21, 1987, a delinquency petition was filed in the Juvenile Court of Chambers County charging that C.L.M., Jr. “did intentionally damage a building of Lisa Johnson and Debbie Stokes, by starting or maintaining a fire or causing an explosion, in violation of Section 13A-7-42 [arson in the second degree] of the Code of Alabama, against the peace and dignity of the State of Alabama.” (R. 906) Following a hearing on this petition, the trial judge found this appellant to be a juvenile delinquent and committed him to the Alabama Department of Youth Services. The appellant now appeals to this court, pursuant to Rule 28(a), A.R.J.P.
On May 12, 1987, Lisa Johnson and Debra Jean Stokes were co-owners of a home, located at Route 1, Box 533, Lot 150 in the Forrester Subdivision in Cusseta, Alabama. Both Johnson and Stokes were teachers. Johnson taught at Smiths Station High School and Stokes taught at Langdale Elementary School. On the morning of May 12, 1987, Johnson was the last one to leave home. She left for school at 6:50 a.m. (central time). All the windows and doors to the house were locked when Johnson left the house. Stokes’s and Johnson’s two dogs were left in the garage.
At approximately 1:30 p.m. that day, Johnson and Stokes were notified at school that their house was on fire. When they arrived home, they found their house had burned and was 80 percent destroyed. Johnson and Stokes lost everything in their house.
Johnson testified that she knew the appellant because he was a student at Smiths Station High School. He had been Johnson’s aide and had been a student in her Model United Nations class. Johnson stated that the appellant was a good student but she removed him from the Model United Nations class and dismissed him as her aide on April 6, 1987, because of discipline problems.
Johnson also testified that she had a business known as Back Door Ceramics which she operated from a shed in her back yard prior to the fire. She stated that the appellant knew about this business and the fact that it was located at her home.
Peggy and Earl Hamil testified that they lived behind Johnson’s and Stokes’s house on May 12, 1987. At approximately 10:00 on that morning, the Hamils were driving to their home from the post office when they saw a green Ford LTD with a white top coming from a pulpwood road that runs between their house and Stokes’s and Johnson’s house. They noticed the car because the pulpwood road is never used. The Hamils were unable to see who was in the LTD.
At approximately 12:45 that afternoon Samuel “Skéet” Freeman came to their house and told them that Stokes’s and Johnson’s house was on fire. The Hamils alerted the fire department about the fire.
On the morning of May 13, 1987, the Hamils were walking on the pulpwood road when they noticed some tire tracks. They found an automobile tag nearby and gave it to Stokes.
*701 At approximately 1:00 p.m. on the day in question, the Lee-Chambers Volunteer Fire Department and the East Alabama Fire Department responded to the fire at Johnson’s and Stokes’s house. It took the firefighters approximately thirty minutes to get the fire under control.
Elmer James Smith, Jr. testified that he is a mail carrier in Cusseta and his route includes the Forrester subdivision. Johnson’s and Stokes’s house was on his route.
Smith stated that about a week prior to the fire, he was stopped along his route in the Forrester subdivision by this appellant. The appellant asked Smith if he knew where Back Door Ceramics was located. Smith told the appellant to follow him and he would show the appellant where it was. Smith stopped just past Johnson’s and Stokes’s house and told the appellant that Back Door Ceramics was located in the two story house he had just passed. The appellant asked if it was the house with the van parked in front and Smith replied that it was. Stokes owned a van and she had missed school on May 8, 1987. Her van was at her house that day.
At approximately 12:30 p.m. on May 12, 1987, Smith was leaving the Forrester subdivision on Forrester Road (which runs in front of Stokes’s and Johnson’s house) when he noticed Stokes’s and Johnson’s house on fire. As Smith got to the end of Forrester Road, he saw the appellant coming into the Forrester subdivision. Smith stopped the appellant and told him to call the fire department because Back Door Ceramics was on fire. The appellant drove on towards Johnson’s and Stokes’s house. Smith stated he thought the appellant was driving a green car.
“Skeet” Freeman testified that he lives on Forrester Road, about 200-300 yards from where Johnson’s and Stokes’s house was located. At around 12:30 p.m. on May 12, 1987, Freeman went outside to get his mail. Once outside, Freeman noticed black smoke coming from Johnson’s and Stokes’s house. As Freeman walked towards the house, a green and white Ford LTD drove by him. Taby Weston took Freeman to the Hamils’s house so the fire department could be alerted. Freeman did not have a telephone.
Freeman and Weston then returned to the burning house. Freeman went around to the back of the house and found the sliding glass door open. He yelled to see if anyone was inside the house and then let two dogs out of the garage.
Mike Boyd, an investigator for the Chambers County Sheriff’s Department, testified that on May 13, 1987, he received an Alabama automobile dealer’s tag from Stokes. After running a registration check on the tag, Boyd went to A & T Motors in Phenix City, Alabama, on May 14,1987. The owner of A & T Motors is this appellant’s father.
Boyd talked to the appellant’s father about the automobile tag. The appellant’s father admitted the tag belonged to him and said the appellant told him the tag had been stolen off his 1977 green and white Ford LTD while it was parked at Smiths Station High School.
Boyd told the appellant’s father that he wanted to talk to the appellant. The appellant’s father said his son was at school. When Boyd told the appellant’s father that his son was not at school, the appellant’s father made a phone call and the appellant arrived shortly in a 1977 green and white Ford LTD. This vehicle did not have a tag. The appellant’s father refused to allow Boyd to inspect the inside of this LTD.
Boyd also conducted an investigation at the scene of the fire. He testified that the most heavily damaged part of the house was the bottom of the staircase just inside the front door. Boyd said a forced entry had been made through the rear kitchen window. The window frame had been pushed inward and several screws which held one of the window panes in place had been removed. Part of the window frame was found underneath the window lying in a flower bed. The frame did not appear to be damaged by the fire.
Byron Pigg, the Fire Chief for the East Alabama Fire Department, Henry Davis and John Robinson, of the State Fire Marshall’s office, conducted an investigation to *702 determine the point of origin and the cause of the fire in question. The three men concluded that the fire originated at the bottom of the stairway. In determining the cause of the fire, the three men considered whether the fire was 1) a result of an act. of God, 2) accidental, or 3) intentionally set. An act of God was ruled out as the cause of this fire. The three concluded that the fire was not accidental because there was no electrical wiring near the point of origin. The only electrical outlet in the area of the fire was eliminated as a cause of the fire because it was still intact after the fire. The conclusion of these three experts was that the fire had been intentionally set.
Samples were taken from the point of origin of the fire and they were negative for the presence of accelerants such as petroleum distillates. However, Smith testified that there would be times when there would be no evidence of accelerants because of the type and quantity of the accel-erants used.
The investigators testified that there was evidence of a forced entry through the kitchen window. Part of the window frame was found lying on the ground. It had not sustained any fire damage. The glass from the window had fallen inside the house into the kitchen sink. A window which breaks during a fire usually breaks outward. The part of the bottom of the sink which was covered by the glass was not discolored by smoke. The sides of the pieces of glass which were lying next to the surface of the sink had not sustained heat damage. From these facts, the investigators concluded the kitchen window had been broken prior to the fire.
All of the glass from the sliding glass door had fallen in one place which led the investigators to conclude that this door was open when the fire started. If the door had been closed, glass would have fallen on both sides of the frame. A stick (which' was placed inside the sliding glass door track by Johnson) was found outside the track lying on the floor.
Robert Lowe, the principal at Smiths Station High School, testified that on May 12, 1987, the appellant’s schedule was as follows:
1st period — study hall
2nd period — study hall
3rd period — mathematics
4th period — history—lunch
5th period — Spanish
6th period — English
7th period — chemistry
Lowe stated that the school’s absentee list indicated that the appellant was absent from homeroom, first, second, third, and seventh periods. The list showed the appellant was present in his fourth class. Lowe testified that students were not allowed to leave school without permission.
Justin Dean Evilsizer testified that he taught mathematics at Smiths Station High School on May 12,1987. The appellant was enrolled in his third period class on May 12, but was absent from class that day. Evil-sizer stated that third period began at 9:55 a.m. and ended at 10:45 a.m.
Evilsizer further testified that in October of 1987, the appellant asked him for a copy of the test which the appellant claimed he took in class on May 12, 1987. Evilsizer’s records did not indicate a test had been given on that day.
Gypsy Floyd Cook testified that the appellant was a student in her fourth period history class at Smiths Station High School on May 12, 1987. The appellant was present that day and he took a test in her class. Fourth period began at 10:50 a.m. and ended at 11:42 a.m.
Juanita Denise Herring, a student at Smiths Station High School, testified that on May 12, 1987, the appellant was present during their fourth period history class. After the appellant finished taking his test, he left class early. The appellant was not in his fifth period Spanish class because the teacher had removed him from the class. The appellant was not in the library during fifth period either. Herring stated the appellant was also absent from his sixth period English class.
Herring stated that prior to May 12, 1987, the appellant had been asking if anyone knew where Johnson lived. The appel *703 lant also said that he knew how to make napalm and he was going to bum down Johnson’s house.
Paula Elizabeth Wood testified that she was the librarian at Smiths Station High School on May 12, 1987. On that day, she saw the appellant enter the library from the door that leads to the parking lot. While Wood was standing outside the library in the hallway, the appellant made a point of asking her which period it was. She replied that it was third period.
Elizabeth Long testified that the appellant was absent from her sixth period English class on.May 12, 1987.
Ashley Robin Cannon testified that she was a student at Smiths Station and participated in the Model United Nations program along with the appellant. She stated that she had heard the appellant make several threats against Johnson including that he would like to kill her and bum down her house. Cannon also heard talk that the appellant was looking for Johnson’s house. When she asked him about this, the appellant told her that he was looking for her house because he wanted to bum it. Cannon also stated that the appellant boasted that he knew ways of killing people and blowing up cars.
Crystal Newbold testified that she was a student at Smiths Station High School on May 12, 1987. She stated that she knew the appellant had been looking for Johnson’s house prior to May 12, 1987. On the day before the fire, Newbold asked the appellant if he had found Johnson’s house. He told her that he had and that it was a cedar house and should “go nicely.”
On the day of the fire, she received a call after she got home from school. When she asked who it was, the person replied that it was “somebody you’ve been talking about all day.” (Vol. Ill, R. 96) Newbold asked if this person had done it and he replied that, if he had, he would have let her dogs out. When she asked if he had paid someone to do it, the person replied that he would not waste his money.
The appellant put on several witnesses who testified as to his good reputation in the community. Two of his friends testified that the appellant was in third period on the day in question. They also stated that the appellant denied that he had committed this offense.
The appellant testified that he did not go to school on the day in question until third period. He stayed at school until after fourth period and then he left and went home to eat. He remained at home until 3:00 p.m. when two of his friends came to his house and told him that Johnson’s house had burned.
The appellant admitted he had made threats about burning Johnson’s house down in “moments of rage.” However, he denied that he committed this offense.
The appellant’s mother testified that she arrived home at 12:30 p.m. on the day in question, and the appellant was already there. She testified that she, the appellant, and a friend played cards all afternoon.
Richard Wayne Elhard testified that he was building a swimming pool at the appellant’s home on the day in question. He stated he saw the appellant and his Ford LTD at the appellant’s house that day at approximately 1:15 p.m. The automobile dealer’s tag was on the LTD at that time.
I
The only issue raised by this appellant on appeal is that there was insufficient evidence presented at trial to support a finding of delinquency.
“A person commits the crime of arson in the second degree if he intentionally damages a building by starting or maintaining a fire or causing an explosion.” Ala.Code, § 13A-7-41(a) (1975).
In addition, in order to establish the corpus delicti of arson, “burning by accidental and natural causes must be satisfactorily excluded.” Ex parte Locke, 527 So.2d 1347 (Ala.1988). The corpus delicti of arson may be proven by circumstantial evidence. Galloway v. State, 416 So.2d 1103 (Ala.Cr.App.), cert. denied, 416 So.2d 1103 (Ala.1982).
“In reviewing a conviction based on circumstantial evidence, this court must *704 view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude.
[[Image here]]
“Guilt is not established by circumstantial evidence unless the facts relied on are such that it is the only conclusion fairly to be drawn from them. Fuquay v. State, 22 Ala.App. 243, 114 So. 892 (1927). If all the material circumstances in evidence point to guilt and exclude any reasonable hypothesis except that of guilt a conviction is warranted. Pruett v. State, 33 Ala.App. 491, 495, 35 So.2d 115 (1948).
“However, ‘it is not every hypothesis, but every reasonable hypothesis but that of guilt, that the circumstantial evidence must exclude.’ 23 C.J.S. Criminal Law § 907 (1961).”
Cumbo v. State, 368 So.2d 871, 874-75 (Ala.Cr.App.1978), cert. denied, 368 So.2d 877 (Ala.1979).
At the end of this appellant’s trial, the trial judge stated, “never before can I recall a case that had such a degree of circumstantial evidence that all pointed in one direction.” (R. 399) We do agree with the trial judge because this is one of the strongest cases of circumstantial evidence which has been presented to this court.
In the months prior to this trial, the appellant and Johnson had several difficulties. Johnson had removed this appellant from her class and dismissed him as her aide. As a result of his feelings toward Johnson, the appellant made numerous threats that he was going to burn down Johnson’s house. The appellant admitted making these threats in his testimony at trial. Several students testified that the appellant had been looking for Johnson’s house prior to the fire at issue, and the appellant told them he found the house the day before the fire in question.
Elmer Smith testified that the appellant approached him several days before the fire while on his mail route and wanted to know where Back Door Ceramics was located. Smith showed him the location of Johnson’s house where Back Door Ceramics was located.
At approximately 10:00 a.m. on the day of the fire, the appellant’s car was seen by the Hamils coming out of the pulpwood road which ran behind Johnson’s house. The appellant’s automobile tag was found on this road the following day.
Smith again saw the appellant on the road on which Johnson’s house was located at 12:30 p.m. on the day of the fire. When Smith informed this appellant that Back Door Ceramics was on fire and told him to call the fire department, the appellant continued to drive on towards Johnson’s house. Another witness testified that he saw the appellant’s car on this same road at approximately the same time.
The Smiths Station High School’s records indicate that appellant was not in school at the time when he was seen in the vicinity of Johnson’s house on this date.
The investigation of the fire revealed that it was an intentionally set fire. Natural and accidental causes of the fire were completely eliminated by investigation. The evidence showed that there was a forced entry through the kitchen window to the house before the fire began. The sliding glass door had been opened and was left open.
We are of the opinion that the evidence presented at trial was clearly sufficient for the trial judge to exclude every reasonable hypothesis except that of guilty beyond a reasonable doubt.
For the reasons stated above, this cause is due to be and is hereby, affirmed.
AFFIRMED.
All the Judges concur.