The plaintiff Lela B. Young, claims compensation under the provisions of the Workmen's Compensation Act (Gen. Acts 1919, p. 206), for the death of her alleged husband, Rich Young, on October 6, 1922, by an accident in the course of his employment and arising therefrom.
Defendant denied plaintiff's alleged relationship to the deceased, and the decision of the trial court denying her relationship and her right to compensation turned upon the court's finding of fact that Rich Young was legally married to Luvenia Johnson about the year 1905, and had never been divorced from her, she still surviving.
The evidence in the record exposes to view a curious narrative of matrimonial instability and change. Rich Young, the deceased employé, was married to the plaintiff on September 28, 1922, by a minister authorized thereto under a regular license. But in February, 1905, Rich Young was married to Luvenia Threadgill by religious ceremony under a regular license. In March, 1900, however, the said Luvenia had married Will Bolling or Bolden, with whom she lived about three years before she left him. As the wife of Rich Young, she lived with him until 1916, when she left Young, and, according to the great weight of the testimony, resumed the marital relation with Bolling for a short while. Bolling died in 1921, and about that time Luvenia Threadgill-Bolling-Young-Bolling contracted her third and last matrimonial alliance, by a ceremonial marriage to the Rev. Johnson, her present husband.
The only testimony in the record tending to show the absence of divorce decrees in favor of or against any of these various marriage participants, is the statement of Luvenia Bolling-Young-Johnson:
"I don't know anything about any divorce against any of my husbands. I don't know of any divorce proceedings by me or by any of my husbands."
Appellant, plaintiff below, invokes the prima facie presumption that the last marriage of Rich Young — his marriage to her — is valid, casting on defendant the burden of proof to the contrary; and her contention is that there was no evidence before the trial court upon which a contrary conclusion could be rested, in short, that the initial presumption of validity has not been evidentially disputed, and must therefore prevail.
In his note to Pittinger v. Pittinger, 28 Colo. 308,64 P. 195, 89 Am. St. Rep. 193, 199, Judge Freeman, after reviewing the authorities, thus states the general rule:
"If it is shown that a party to a marriage has contracted a previous marriage and that his or her former spouse is still living, this has been held not to destroy the prima facie validity of the second marriage. In such a case it has been presumed that the first marriage has been dissolved by divorce, and that the burden to show that it has not rests on the person seeking to impeach the last marriage, notwithstanding he is thereby required to prove a negative. Here, the presumption of the continuance of the first marriage is made to yield to the presumption in favor of the validity of the second marriage and of the innocence of the parties to it."
This rule has been expressly recognized in a general way by this court. McLaughlin v. McLaughlin, 201 Ala. 482, 78 So. 388, citing 26 Cyc. 887-880. See, also, 18 R. C. L. 420, § 44, and the several cases cited.
Though conceding that the authorities have established the rule, Judge Freeman further observes:
"However, the presumption of the dissolution of a prior marriage, whether by death or divorce, *Page 509 
should be indulged with caution. We apprehend that such presumptions sometimes have been made with very little justification. A rule of law which allows an artificial or technical force to be given evidence, which warrants such presumptions, beyond its natural tendency to convince the mind, and requires courts and juries to presume as true that which probably is false, cannot but be fraught with dangerous consequences. In case there is a conflict of presumptions, it would appear more reasonable that that one should yield which has the least probability to sustain it, rather than that the one in favor of innocence and of the validity of the subsequent marriage should prevail." 89 Am. St. Rep. 206.
If we apply this presumption of validity to the marriage between Will Bolling and Luvenia Threadgill in 1900, on the assumption that Bolling had been previously divorced from his first wife, Frances White, it results that during Bolling's lifetime Luvenia could not again marry in the absence of a prior valid judicial decree dissolving that marriage. But again applying the presumptions in favor of the latest marriage, it will be presumed that Luvenia had been divorced from Bolling when she married Rich Young in 1905, disregarding for the moment her testimony as to the absence of divorce, and hence neither of them could marry again in the absence of a prior judicial decree of divorcement. But, applying the presumptions once more, it will be presumed in favor of Luvenia's subsequent and final marriage to Johnson, and of Rich Young's subsequent and final marriage to Lela Young, the plaintiff, that the impediment of their former marriage had been removed by an appropriate judicial decree, disregarding again Luvenia's testimony as to the absence of divorce. The resulting conclusion would be that the marriage of Rich Young to the plaintiff was a valid marriage, and that her claim for compensation as Rich Young's lawful widow would be sustained.
What effect must be accorded to the testimony of Luvenia Bolling-Young-Johnson that she knew of no divorce proceedings by herself or by any of her husbands? If that statement is to be believed, and there is nothing in the record to contradict it, or to impugn its veracity, and if it is sufficient to show an absence of divorce between Luvenia and her first husband, Will Bolling, then it follows that her attempted marriage to the decedent. Rich Young, was invalid, and, further, that no impediment existed to invalidate his marriage to Lela Young, the plaintiff.
If, on the other hand, Luvenia's testimony as to nondivorce is not to be believed, or if it is not sufficient to show the absence of divorce because it does not exclude the possibility of a divorce in favor of Will Bolling on constructive notice to Luvenia (see Coal Run Co. v. Jones, 127 Ill. 379, 8 N.E. 865,20 N.E. 89; Pittinger v. Pittinger, supra, page 196), or because it is incredible or discredited, then, though as already pointed out the presumption of a prior divorce between Luvenia and Will Bolling rendered her subsequent marriage to Rich Young prima facie valid, the same presumption of a divorce between Rich Young and Luvenia rendered his marriage to the plaintiff prima facie valid also.
The only conditions under which Rich Young's marriage to plaintiff could be held as invalid would be on proof that Will Bolling was not divorced from Frances White, thus rendering his marriage to Luvenia invalid, and at the same time rendering Luvenia's marriage to Rich Young valid, followed by proof that the latter marriage was not dissolved by judicial decree in the chancery jurisdiction of Jefferson county. If these conditions in fact exist, proof of them should not be difficult.
Of course if the defendant shows that Rich Young's marriage to Luvenia was not dissolved by judicial decree, it being presumptively valid, the burden would be cast on plaintiff to show that it was invalid by reason of the fact that Luvenia had a living husband from whom she had not been divorced. And upon such proof being made by plaintiff, the burden would be finally shifted to defendant to show that Luvenia's alleged former husband — Will Bolling, of course — was not her lawful husband, by reason of the fact that he had a prior living wife from whom he had not been divorced.
We apprehend that the trial court has not given due effect to the presumptions of law and the material evidence bearing on these various matrimonial transactions, and our conclusion is that the finding of fact in favor of the status of marriage and nondivorce between Rich Young and Luvenia is not supported by any evidence, when all the evidence and the legal presumptions are properly understood and applied.
The writ will be granted, and the judgment will be reversed, and the cause remanded for another trial on such evidence as the parties may offer.
Reversed and remanded.
ANDERSON, C. J., and THOMAS and BOULDIN, JJ., concur. *Page 510