3 So.2d 46

**SLOSS–SHEFFIELD STEEL & IRON CO.**
**v. ALEXANDER et al.**

**6 Div. 628.**

Supreme Court of Alabama.

April 24, 1941.

Rehearing Denied June 30, 1941.

Frank M. James, L. E. Rogers, and George Rogers, all of Birmingham, for appellee Laura Alexander.

Kingman C. Shelburne and Bradley, Baldwin, All & White, all of Birmingham, for appellant.

LIVINGSTON, Justice.

This suit was commenced by Sarah Alexander, who sues for herself and for her minor child Eunice Alexander, against the Sloss-Sheffield Steel and Iron Company, a corporation, claiming compensation due under the Workmen's Compensation Act, Code 1923, § 7534 et seq., Code 1940, Tit. 26, § 253 et seq., for the death of Robert Alexander, who was alleged to be the step-son of Sarah Alexander and a half brother of Eunice Alexander.

In its answer, the Sloss-Sheffield Steel and Iron Company suggested to the court that the persons herein below named were claiming compensation of the defendant for and on account of the death of Robert

Alexander, and requested that the court make and enter an order requiring them to appear and interplead their claims in the cause: namely, Evalina Kidd, who claimed to be the mother of the deceased employee; Howard Alexander claimed to be the dependent father of the deceased employee; Sadie Alexander, alias Sadie Brown, who claimed to be the dependent wife of Robert Alexander; Laura Alexander who claimed to be the dependent common law wife of Robert Alexander; and Helen Stephens who claimed to be a dependent sister of Robert Alexander. Upon being served with process, all of the suggested claimants, except Helen Stephens, intervened in the cause and presented their claims.

After hearing the evidence, the trial court made and entered a decree, in substance, as follows: Robert Alexander was the employee of the defendant, Sloss-Sheffield Steel & Iron Company, at the time of his death, and that his death was the result of an accident arising out of and in the scope of his employment by the defendant, and that the defendant had due and legal notice of his death. That the employment of deceased, at the time of his death, was governed by the Workmen's Compensation Act of Alabama. That Eunice Alexander, a minor, is the half sister and a partial dependent of deceased, and, as such, is entitled to compensation covering a period of three hundred weeks.

Further, at the time of his death, Robert Alexander and Laura Alexander were common law husband and wife, and that Robert was supporting Laura as his wife at that time: that prior to the time Robert and Laura contracted a common law marriage, Laura had purportedly married one Nick Shields in Jefferson County, Alabama, but that prior to said purported marriage, Nick Shields had married one Emmie Bell Smith and that said marriage to Emmie Bell Smith had never been terminated by death or divorce, and, therefore, Nick Shields' marriage to Laura was void, and Laura was free to contract a common law marriage with Robert Alexander. That previous to the time Robert and Laura contracted a common law marriage, Robert had purportedly married Sadie Alexander, alias Sadie Brown, but that previous to said marriage Sadie had married one Henry McLain and that the marriage of Sadie to Henry McLain had never been terminated by death or divorce, and therefore Robert's purported marriage to Sadie was void, and he was free to contract a common law marriage with Laura; and that Laura, as the wife of Robert Alexander, was entitled to compensation covering a period of three hundred weeks. That payments of compensation to Laura Alexander, the wife, and Eunice Alexander, the half sister, were to run concurrently.

This review is by writ of certiorari, and no question is raised as to the amount of the award to either the wife or to the half sister, nor as to their dependency.

Appellant insists, first, that the evidence is not sufficient to support a finding that Robert and Laura entered into a marriage contract; and, second, that if they did enter into such a contract it was void because of the incapacity of the parties—both having at the time living undivorced spouses.

In a compensation case when the review in this Court is by certiorari, as here, this Court will not look to the bill of exceptions to find the weight of the evidence as to any fact found by the trial court, but simply to see if there is any evidence or reasonable inference from evidence to support facts found by the court. If, on any reasonable view of the evidence, it will support the conclusions reached by the trial court, the finding and judgment will not be disturbed. Ex parte. Coleman, 211 Ala. 248, 100 So. 114, 115; Ex parte Sloss-Sheffield Steel & Iron Co., 207 Ala. 219-221, 92 So. 458; Ex parte Louisville & Nashville R. R. Co., 208 Ala. 216, 94 So. 289; Ex parte Nunnally Co., 209 Ala. 82, 95 So. 343; Ex parte Shaw, 210 Ala. 185, 97 So. 694; Ex parte Thomas, 209 Ala. 276, 96 So. 233; Ex parte Little Cahaba Coal Co., 213 Ala. 596, 105 So. 648; Benoit Coal Mining Co. et al. v. Moore et al., 215 Ala. 220, 109 So. 878; Martin v. Sloss-Sheffield S. & I. Co., 216 Ala. 500, 113 So. 578; Bell v. Tennessee Coal & Iron Co., 240 Ala. 422, 199 So. 813.

Much of petitioner's argument reflects upon the credibility of the testimony touching the existence of the marriage contract between Robert and Laura, rather than upon the non-existence of testimony supporting the finding of that fact by the trial court. Under the rule enunciated above, the following excerpts will suffice to uphold the finding of the trial court that Robert and Laura entered into a marriage contract: Laura testified: "At the time of Robert's death he and I were living together as man and wife in Sleepy Hollow." Question: "And did Robert ever call you his

wife to anybody else during the time you were living there?" Answer: "He did, the furniture man and most of them up there. He called me his wife." Question: "And did you ever call him your husband in his presence to anybody else?" Answer: "Yes, sir. At the time of his death, he was supporting me and I was entirely dependent on him. * * * I slept in the same room and same bed with him. I did the things any wife would do around the house there. No body else lived there except me and Robert." O. W. Baker, agent of the Industrial Life and Health Insurance Company, testified: "All of Robert's insurance was made to Laura Alexander as his wife. She was designated as the beneficiary. We had Laura's insurance too, policy number 8901656, Laura M. Alexander, payable to Robert Alexander, husband, beneficiary." Essie Johnson, mother of Laura, testified: Question: "Did Robert ever tell you that he and Laura were married?" Answer: "Yes, sir. That occasion as close as I can come, was in January '35. There was a little something come up—you know—she was pregnant, and so I got after him about it, and he said he was going to take her and marry her. So he left the first pay day in January, and asked me to go with him and I told him I could not go, and he said, 'well, I am going down and marry her,' and I said. all right. * * * When they come back, I said, 'well did you all marry?', and he said 'yes, if you don't believe me, ask my motor boss' * * * After that I heard him introduce her as his wife: he called her his wife. He pronounced her his wife at Sokol Bros. when she went down there to buy a radio." Howard Alexander, father of Robert, testified: "I do know who Robert was living with during the last year of his life; it was Laura. * * * I did hear him refer to Laura as his wife. I have been to their home: they were living together there, and nobody else lived in the house with them."

But it is insisted by petitioner that even though there is sufficient evidence upon which to predicate a finding that Robert and Laura entered into a common law marriage contract, the contract was void for the lack of legal capacity of the parties, they both, at the time, having living undivorced spouses.

■ The presumption that a marriage is legal and valid in all respects is one of the strongest known to the law, and while it is true that the marriage relation when once proven is presumed to continue, yet this presumption attaches with full force to the latest marriage, the reason being that the presumption of innocence, morality and legitimacy will counterbalance and preponderate against the presumption of the former relations. 18 R.C.L., pages 416, et seq.; Kolombatovich v. Magma Copper Co., 43 Ariz. 314, 30 P.2d 832-834.

■■ A common law marriage having been shown, the law presumes its validity, and casts the burden upon him who questions it to establish its invalidity. Ex parte Young (Young v. Woodward Iron Co.), 211 Ala. 508, 101 So. 51; McLaughlin v. McLaughlin, 201 Ala. 482, 78 So. 388; 26 Cyc. 887-8; Bell v. Tennessee Coal & Iron Co., Ala.Sup., 199 So. 813, 815.[1] See, also, 18 R. C.L. pages 417, et seq. And to show that a party to a marriage contract has contracted a previous marriage and that his or her former spouse is still living is not enough to destroy the prima facie validity of the latest marriage. The presumption is that the prior marriage has been dissolved by divorce, and the burden to show that it has not rests upon the person seeking to impeach the last marriage, notwithstanding he is thereby required to prove a negative. Authorities supra.

■ Petitioner asserts the invalidity of the common law marriage of Robert and Laura on the ground that at the time the marriage contract was entered into, Robert was the lawful husband of Sadie Alexander, alias Sadie Brown, and that Laura was the lawful wife of Nick Shields. The burden was on petitioner to establish, not only the fact of the previous valid, legal marriage of one of the parties, Robert or Laura, but that such previous marriage had not been dissolved by divorce or death.

■ The finding of the lower court is to the effect that petitioner, defendant in the court below, failed to meet this burden because at the time of the purported marriage of Robert and Sadie, Sadie was the lawful wife of Henry McLain, and at the time of the purported marriage of Laura and Nick Shields, Shields was the lawful husband of Emmie Bell Smith, therefore, neither of these marriages being legal, Robert and Laura were free to marry each other. And under the rule stated above, if there is any evidence or reasonable inferences from evi-

[1] 240 Ala. 422.

dence to support this finding, it will not be disturbed.

Nick Shields testified, in part: "I had lived at Thomaston, in Marengo County, Alabama, and I had married there before the time Laura and I were married. I had married a girl by the name of Emmie Bell Smith, and we had lived at Thomaston. I had two children by Emmie. * * * I had not ever got a divorce from Emmie. * * * Emmie never did get a divorce from me. * * * She was alive and I have known she was alive, since the time Laura and I went through that marriage ceremony."

Sadie Alexander, alias Sadie Brown, testified, in part: "I live at Flat Top in Jefferson County, and have lived there for better than two years. Before that I lived at Somerset in Walker County for about six months. Before that I lived at Cordova. * * * Along back in 1930, I lived in Jefferson County. In 1926 I lived in Cordova. On May 25, 1936 (evidently 1926), I married Henry McLain. * * * In 1926 or 1928, my mother put in for a divorce for me from Henry, but I never did bother myself about it. My mother went to see lawyer Lecil Gray at Jasper about the divorce. * * * Robert and I were married on the 8th day of December 1930, at the old courthouse in Jefferson County. * * * and I lived with him until 1934." Hezekiah McLain testified in part, "I am a brother of Henry McLain. I don't know where Henry is. * * * that was in 1933 I saw him last."

Claimant Laura Alexander introduced in evidence a certified copy of the records of the Circuit Court of Walker County, Alabama, in equity, showing a dismissal for want of prosecution of a suit for divorce filed by Sadie McLain against Henry McLain, which decree of dismissal is dated September 26, 1927. Also a letter (to the admission of which no objection was interposed) signed by the register of the equity division of the Circuit Court of Walker County to the effect that a careful examination of the records failed to disclose a divorce decree in favor of either of the parties from December 27, 1926, to that time (November 4, 1938).

This evidence meets our requirements that there be some evidence to support the conclusions reached by the trial court.

The award of compensation to Eunice Alexander was erroneous. If we assume that the half sister of deceased was partially dependent on him and entitled to compensation, she could not take now. Section 7553, Code of 1923, Code 1940, Tit. 26, § 281, provides: "Total dependents.—Wife, child, husband, mother, father, grandmother, grandfather, sister, brother, mother-in-law and father-in-law who were wholly supported by the deceased workman at the time of his death and for a reasonable period of time immediately prior thereto shall be considered his total dependents, and payment of compensation shall be made to them in the order named."

The statute expressly states that the parties named therein shall take "in the order named." To justify an award to the half sister of deceased, the evidence must show the death or non-dependency of all those in a class ahead of the sister (in this case half sister). In no case can a sister or half sister take concurrently with a wife, but must wait, and if the wife dies or remarries before receiving compensation for the full three hundred weeks, the sister or half sister could then, and only then, receive her award out of the balance of the remaining weeks. Ex parte Todd Shipbuilding & Dry Docks Co., 212 Ala. 477, 103 So. 447; Locke v. Centennial Ice & Coal Co., 214 Ala. 411, 108 So. 46.

The judgment is affirmed as to the award to Laura Alexander, and modified as to the award to Eunice Alexander.

Modified and affirmed.

GARDNER, C. J., and THOMAS and BROWN, JJ., concur.