17 So.2d 868

## FREED v. SALLADE.

### 6 Div. 202.

Supreme Court of Alabama.

May 11, 1944.

Chester Austin, of Birmingham, for appellant.

G. P. Benton, of Fairfield, for appellee.

FOSTER, Justice.

The question here is the validity of a mortgage executed on January 12, 1940, by Noah Freed and Lena Freed as his wife on what was the homestead of Noah, a resident of Alabama, less in value and area than the law allows as a homestead.

It is conceded that Lena was not his wife, either by ceremonial marriage or by common law contract. But she had lived with him in illicit relations since 1921, until he died, and had several children by him.

Noah died in June, 1941, and Mattie, signing as Mattie Freed, the complainant, claims that she was his lawful wife on January 12, 1940, when the mortgage was made, and that she did not sign it with separate acknowledgment as required by section 7883, Code of 1923, Code 1940, Tit. 7, § 626, then in effect. She claims to have married Noah December 27, 1906, in Mobile County. That after the marriage she and Noah lived together as man and wife in Perry County and in Montgomery County: both before and after he served a penitentiary sentence of five years, and that they were never divorced. They separated, without giving details, and though never divorced, as she claims, she married Garrett Duncan on May 21, 1922, and lived with him as his wife until he died two years before the death of Noah. That she never lived with Noah as his wife after they separated before or since she married Garrett Duncan. Noah purchased the house from the Tennessee Coal & Iron Company by a lease sale contract on March 3, 1936, and lived in it with Lena until he acquired a deed on November 19, 1940, and until he died June 1, 1941, having mortgaged it to respondent January 12, 1940.

During all the time from 1921 to 1941, when Noah died, he and Lena lived at Fairfield, and Mattie and Garrett lived at Pratt City for about nineteen years until Garrett died. Mattie never lived in the homestead of Noah here in question; was not living with him, when he bought it, but had what she then claimed a lawful husband, to-wit, Garrett Duncan. She signed as Garrett's wife for the purchase of a home jointly with her sister. She still occupies it with her sister. As long as Noah lived after they separated, she made no claims on Noah as his wife. After his death, she had Noah's house and lot set apart to her in the probate court as a homestead.

This proceeding is a suit in equity filed by Mattie Freed to have the mortgage vacated because it is void under section 7883, Code of 1923, since she as the lawful wife of Noah Freed did not sign and separately acknowledge it as required, and since it was his homestead at the time. The equity of the bill is not directly presented on this appeal.

There was an answer generally denying the allegations of the bill and specifically denying that Mattie and Noah were married; alleging that Mattie abandoned the home of Noah more than twenty years prior to his death, knowing all that time he was living with Lena as his wife; that she abandoned all interest in Noah and his homestead by such conduct for twenty years; that the house on Noah's lot burned, and that respondent furnished all the money due by the mortgage to Noah with which to rebuild the house; that it was so used; and that the house now in question was built with those funds.

On the issues so made, the trial court heard the evidence, the witnesses testifying in open court in the presence of the judge. He rendered a decree denying relief without an opinion or a finding of the facts.

The question is whether, at the time of the execution of the mortgage on January 12, 1940, Mattie was his wife in the sense that his mortgage of his homestead had to be signed and separately acknowledged by her as required by section 7883, Code of 1923. That section of the Code supplements section 205, Constitution of 1901, to the same effect. Those provisions of the law are for the benefit of the wife, and deed to her by the husband need not be thus executed. Sims v. Gunter, 201 Ala. 286, 78 So. 62 (11).

Our interpretation of those provisions has been influenced by that thought. The wife's absence alone does not authorize a conveyance by the husband without her signature (Carey v. Hart, 208 Ala. 316 [3], 94 So. 298), although she has become insane. Lewis v. Lewis, 201 Ala. 112, 77 So. 406; Sumners v. Jordan, 220 Ala. 402, 125 So. 642; Owens v. Harris, 222 Ala. 461, 133 So. 6. Some courts hold that a voluntary abandonment by the wife of the husband, assuming there was a valid marriage and no divorce, justifies a sale of the homestead by the husband without her signature: while others take a more restricted view. 26 Am.Jur. 96, § 151; 29 Corpus Juris 933, notes 99 and 1; 45 A.L.R. 431.

We have no case in Alabama directly in point. But we think that in this State the mere separation of husband and wife, regardless of the cause of the duration, even though she abandoned him without just cause, cannot be read into the statute and Constitution as an exception not there expressed. The statute makes the signature and assent of the wife essential. But as

we have noted this is for the benefit of the wife. We leave undecided as being unnecessary whether it means a wife who has not repudiated permanently the marital status by engaging in a completely performed marriage with another, followed by years of cohabitation as his wife, receiving all rights and benefits of such a marriage.

■■ It is well settled that under such circumstances there is certainly a strong presumption that if she had ever been married to Noah, there had been a divorce. "The burden * * * rests upon the person seeking to impeach the last marriage, notwithstanding he is thereby required to prove a negative." Sloss-S. S. & I. Co. v. Alexander, 241 Ala. 476, 3 So.2d 46, 48; S. S. S. & I. Co. v. Watford, Ala., 17 So.2d 166;[1] Ex parte Young, 211 Ala. 508, 101 So. 51; Bell v. Tennessee C. I. & R. Co., 240 Ala. 422, 199 So. 813. It was truly there noted that the presumption of a divorce because of a second marriage must be accepted with caution and must yield so as not to require "courts and juries to presume as true that which probably is false." This seems to mean that the presumption of an innocent second marriage is overcome when the circumstances require a reasonable inference to the contrary.

■ Here the circumstances support the presumption of innocence, rather than the contrary. We have related them. The only evidence that she was not divorced was her own testimony. She lived in Perry, Montgomery and Jefferson Counties. The records of the divorce courts of none of them were examined for the benefit of this trial as to a divorce from Noah. In the Watford case, supra, recently decided by this Court, her testimony that there was no divorce was corroborated by the court records of every county in which they had lived. The burden was on complainant in this case and she could have had the records searched to corroborate her testimony. The trial judge should not be put in error for not accepting her testimony. By her subsequent marriage, she solemnly declared that she was then free to marry again.

■ It is also contended that she was never married to Noah at all. The records of Mobile County as to her marriage to Noah, which she claims establish the fact, do not show a completed marriage. A marriage license was issued December 26, 1906. It was returned December 27, 1906, reciting that the marriage was solemnized that day, but it was not signed by anyone. The Code of 1896 was then in effect. Section 2847 required all persons solemnizing a marriage by virtue of a license to certify the fact to the judge of probate. The certificate must be recorded, and a certified copy is presumptive evidence of the fact (see Section 12, Title 34, Code of 1940). The failure so to certify was a criminal offense under section 5594, Code of 1896 (section 14, Title 34, Code of 1940). The certificate of marriage between Noah and Mattie, not being signed, is no certificate at all, and is not direct evidence of their marriage. It may or not be corroborative of Mattie's testimony that they were married under that license. It could be corroborative, with the officiant neglecting to sign it, or a failure to do so may have been because no one solemnized it. But we will accept it as corroborative that they did marry, and assume that in fact they married under that authority.

But as we have said the trial court will not be reversed for finding, as he probably did, that Mattie did not carry the burden cast on her by the presumption of her second marriage that she had been divorced. On the other hand, the circumstances amply corroborate the existence of a divorce, notwithstanding her testimony which was itself uncorroborated by any fact or circumstance in the evidence. Ex parte Young, supra.

### Effect of Homestead Proceeding.

■ A decree of the probate court dated November 21, 1942, was in evidence. No other feature of the proceedings was offered. It refers to a report of commissioners appraising and setting aside the house and lot to Mattie Freed, as the widow of deceased Noah Freed; and recites that notice was given as required by law and no exceptions were filed: a finding that it was all he had and worth less in value and area than the exemption allowed by law, and that he left no minor child. It was therefore ordered that the house and lot be set apart to Mattie Freed, widow of deceased, and that title vest in her. No petition was shown by which the probate court acquired jurisdiction. Boozer v. Boozer, ante, p. 264, 16 So.2d 863. The recital as to title amounted to nothing. Laurence v. Mitchell, 244 Ala. 678, 15 So.2d 583.

---

[1] Ante, p. 425.

We are not here dealing with the effect of the decree on the next of kin. If we assume that a proper petition was filed and notices given, and the decree was not subject to collateral attack, its effect on the pending situation is based on different considerations. The purpose of such a proceeding is not to affect the status of one who has contracted with decedent in respect to the validity of his contract. No issue was authorized or made up in which this mortgagee could participate in respect to a matter affecting his rights. A decree as to her status as the widow of Noah could not deprive this mortgagee of the benefits of his mortgage, when he had no duty or right to contest the issue. It is wholly here irrelevant to the question in this case.

We do not consider it necessary to discuss the question of whether complainant should be required to do equity by repaying the amount advanced to Noah on the mortgage which was used in rebuilding the house now on the lot, on the principle declared in Owens v. Harris, 222 Ala. 461, 133 So. 6; Sumners v. Jordan, 220 Ala. 402, 125 So. 642, since relief was properly denied her for other reasons.

Affirmed.

THOMAS, LIVINGSTON, and STAKELY, JJ., concur.

