## RAY v. SOCIAL SECURITY BOARD.
### No. 567.

District Court, S. D. Alabama, S. D.
July 14, 1947.

Rit M. Smith, and Jesse F. Hogan, both of Mobile, Ala., for plaintiff.

William H. Cowan, Asst. U. S. Atty., of Mobile, Ala., for Social Security Board.

McDUFFIE, District Judge.

This cause came on to be heard on the complaint of Mrs. Lizzie C. Ray on behalf of herself and her minor children, under the provisions of Title II of the Social Security Act of Congress, 42 U.S.C.A. §§ 401–409. The Social Security Board filed answer to the complaint, which was amended by adding a count seeking to recover for the children only, under Section 202(c) of said Act, 42 U.S.C.A. § 402(c). And the Board filed a motion for summary judgment on its answer. The children and the dates of their birth are as follows: Carleton E., born September 25, 1936; Lizzie C., born February 16, 1938; and Margarette Ray, born March 15, 1941.

The claim of Mrs. Ray was investigated by the appropriate authorities, an appeal was taken from the findings and conclusions of the Field Officer at Mobile, Ala-

bama, and these findings and conclusions were finally passed upon and affirmed by the Appeals Council of the Social Security Board at Washington. Payment to Mrs. Ray and her minor children was denied on the ground that Mrs. Ray was not legally the wife of the deceased worker, Calvin P. Ray, for the reason that she had a living husband from whom she was not divorced; and that under Section 209(m), 42 U.S.C.A. § 409(m), and other related provisions of the Social Security Act, the above-named children are the illegitimate children of the deceased worker and disqualified to receive the monthly benefits provided by the Act. The Board upon such denial made awards under Section 202(g), 42 U.S.C.A. § 402(g), to adult and non-dependent children of the worker by his deceased wife.

This court understands the rule to be that if there was substantial evidence upon which the Board acted, the court is bound by the Board's action, provided the law was properly applied by the Board. The investigation by the Board was fair, and its action is in nowise claimed to be arbitrary. The question presented is on the application of the law.

In reviewing the findings and the action of the Board, this court has devoted a great deal of time and study to the facts set forth in the record, as well as the conclusions and awards of the Board, with the view of applying the Social Security Act to the facts, bearing in mind that generally relief statutes, such as the one being considered, are to be construed liberally.

There is no dispute that the above-named minor children are the natural children of the deceased worker, that they were recognized as his legitimate children, and that their mother, Mrs. Lizzie C. Ray, who lived with him continuously for about fifteen years, was recognized as his lawful wife. It is undisputed that these children and their mother were living with and being supported by Mr. Ray, the deceased worker, at the time of his death in the city of Mobile. It is also undisputed that Mr. Ray made a will which was duly proven and entered of record in Mobile

County, and in which will he named Mrs. Ray as his wife and the above-named children as his children.

The record also shows that Mrs. Ray was married in 1910 to Mr. R. L. Spivey, at Century, Florida; that they separated about the year 1926, and in the year 1930, Mrs. Ray, then Mrs. Spivey, filed through her attorney in Escambia County, Alabama, a petition for divorce from Mr. Spivey. The record shows that Mr. Spivey was personally served and filed no answer and, after more than thirty days, a decree pro confesso was rendered against him on April 20, 1931. According to the record, Mrs. Ray was advised by her attorney that a divorce had been granted or would be granted. The records of Escambia County, however, show that the petition, after the decree pro confesso was entered, was dismissed without prejudice in the year 1937. The marital ties with Spivey having been broken in 1926, Mrs. Ray married the deceased worker about four years thereafter, and continued to live with him until his death. Their children, born after their marriage, were regarded by friends and neighbors as having been born in lawful wedlock. Mr. Spivey, the first husband of Mrs. Ray, also believing that divorce was granted to her, has himself married again. He admits being served and states that he assumed the divorce would be rendered after service upon him. Neither he nor anyone else has ever questioned the marital status of the deceased worker and Mrs. Ray, including Mr. Ray's children by the first Mrs. Ray, deceased.

In considering this case the court is impressed with the extreme and unusual illiteracy of the surviving widow of the deceased worker. As shown by her letters in longhand in the record she is a woman of very limited education and rather low intelligence, and it is difficult to hold her responsible for failing to follow up her petition for a final decree of divorce from her first husband. Undoubtedly she believed her marital contract with him had been canceled. The fact that a decree pro confesso was rendered indicates her good faith in trying to live within the law. Be this as it may, it may be repeated the record fails to show that any person ac-

quainted with either Mr. or Mrs. Ray for a long number of years during their residence in Mobile, Alabama, in Gulfport, Mississippi, in Baton Rouge, Louisiana, and in Choctaw County, Alabama, during which time she bore five chidren by Mr. Ray, ever questioned their marital relationship.

An investigation was made in Escambia County, Alabama, revealing that no final decree of divorce was to be found of record. An inquiry was likewise made in Monroe and Baldwin Counties, but no investigation was made by the Board in any of the other counties of Alabama or in any other places named where Mr. and Mrs. Ray resided.

Under the facts disclosed by the record in this case, the decision of this court must turn upon the questions:

(1) Has the government discharged the burden of overcoming a presumption prevailing in Alabama that the marital status of the deceased worker and Mrs. Ray was legal?

(2) Assuming that the presumption of the legality of the marital status was overcome, under the facts in this case does this technical flaw in the marital status deprive the surviving widow and dependent children of the benefits of the Social Security Act?

(3) Again assuming the burden of overcoming the presumption of the legality of the marital status of Mr. and Mrs. Ray has been met by the government, and that their children are technically illegitimate children, which assumption is indeed questionable, and applying the provisions of Title II of the Social Security Act as a whole, did the Congress intend to deny *such children* the benefits sought for them in this case, where it is undisputed that they lived with and were supported by the deceased worker?

Under a liberal construction, which should be given to this relief statute where interests of dependents are involved, this court has concluded that the Social Security Board failed to apply properly the provisions of the act to the facts disclosed in the record.

The Supreme Court of Alabama has held that where a marital contract was repudiated and the wife married another, followed by years of cohabitation, there is a strong presumption that there was a divorce from the first husband. Freed v. Sallade, 245 Ala. 505, 17 So.2d 868.

It is likewise held in Alabama that the burden of overcoming the presumption of validity of the second marriage is upon the party attacking it. Sloss-Sheffield Steel & Iron Co. v. Alexander, 241 Ala. 476, 3 So.2d 46. It should be stated, as was quoted in another Alabama Supreme Court decision (Walker v. Walker, 218 Ala. 16, 117 So. 472), that the legitimacy of a marriage, as well as of the offspring of the parties thereto, is presumed, rather than an illegitimate relationship, and, on the part of the mother and father, one of adultery or concubinage. While such a presumption may be overcome, as all presumptions may, this court does not believe the investigation made by the authorities in this cause with a view of overcoming such presumption was extensive enough to do so, in carrying out the purposes of the Social Security Act.

In Alabama, the question of venue did not determine the jurisdiction of courts passing upon petitions for divorce, unless such was raised. Venue could have been waived, it being a statute for the benefit of the defendant. Even though the evidence submitted to rebut the presumption of a legal marriage in cases like this must be negative in nature and cautiously considered, it must be the result of a far-reaching inquiry, and substantial evidence must be submitted in order to overcome the presumption of the legality of the second marriage. It is a very sound policy to protect the good name of a man and a woman who have lived together for many years and reared a family. Mrs. Ray might have, even though she did not claim to do so, secured a divorce from her first husband in any Alabama county, if the question of venue was not raised by Mr. Spivey. If no answer be filed prior to decree pro confesso, venue is waived. White v. White, 206 Ala. 231, 89 So. 579.

Examination of the records of three counties only is of doubtful sufficiency to overcome the presumption of a divorce in this case. In the Alabama case of Freed v. Sallade, supra, a woman testified that she was not divorced fom her first husband, but the effect of the holding of the court was that she occupied the status of a divorced woman when, after the repudiation of the marital contract, she left her first husband, married and continued to live with another man for a long number of years. True, that case involved a wife's homestead rights, while the instant case involves the rights of a deceased worker's dependent children whose mother occupied a status of being divorced from her first husband, and therefore the legal wife of Mr. Ray.

■■■■ Assuming, however, that the above conclusion is questionable or unsound, the next question for consideration, upon which this case must turn, is whether an illegitimate child, living with and supported by a deceased worker at the time of his death may claim a child's monthly benefits under Section 202(c) of the act.

All agree that the Social Security Act was designed for the protection of society and was amended in 1939 to care for the dependents of those who are unable to accumulate an estate sufficient to care for dependent children of tender years after the death of the worker, rather than have them become wards of local welfare or charitable organizations. Title II of the act (Sections 201–209, inclusive, 42 U.S.C. A. §§ 401–409), must be construed as a whole with the view of ascertaining the intent of the lawmakers by considering each section in pari materia.

■■■■ This court is not unmindful of Section 209(m), which provides that in determining whether an applicant is the wife, widow, child, or parent, the Board shall apply the law of devolution of intestate personal property in the state where the insured was domiciled at the time of his death. However, Section 202(c) (1) provides: "Every child (as defined in section 209(k)) of an individual * * * who died a fully or currently insured individual * * * if such child (A) has filed application for child's insurance benefits, (B) at the time such application was filed was unmarried and had not attained the age of eighteen, and (C) was dependent upon such individual at the time * * * of such individual's death, shall be entitled to receive a child's insurance benefit for each month * * *."

Under Section 202(c) (3), the definition of a dependent child is given as follows:
"A child shall be deemed *dependent* upon a father or adopting father, or to have been dependent upon such individual at the time of the death of such individual, *unless,* at the time of such death, or, if such individual was living, at the time such child's application for child's insurance benefits was filed, such individual was *not living with or contributing to the support of such child and—*

"(A) such child is neither the legitimate nor adopted child of such individual, or

"(B) such child had been adopted by some other individual, or

"(C) such child, at the time of such individual's death was living with and was chiefly supported by such child's stepfather." (Italics supplied.)

Section 209(k) reads: "The term 'child' (except when used in section 202(g)) means the child of an individual, and the stepchild of an individual by a marriage contracted prior to the date upon which he attained the age of sixty and prior to the beginning of the twelfth month before the month in which he died, and a child legally adopted by an individual prior to the date upon which he attained the age of sixty and prior to the beginning of the twelfth month before the month in which he died."

A study of the above-quoted paragraphs, especially the one paragraph defining a dependent child, clearly indicates that Congress laid stress upon the fact that for the purposes of the act a child is deemed a dependent one if *living with and being supported by the worker at the time of his death.* Under this section, 202(c) (3), above quoted, it will be noted that there is no provision that an illegitimate child, if *living with and being supported by the*

*deceased worker,* may not claim the benefit of the act. In the use of the conjunctive "and" this paragraph may well be construed to mean that even though the child be technically illegitimate, if he be living with the worker and supported by him, he is entitled to the benefits of the act.

Applying the law of Alabama, as provided in Section 209(m), a *stepchild* has *no right of inheritance;* yet under Section 202(c) (4) a stepchild is specifically mentioned as being within the definition of a "dependent *child,*" *providing such stepchild is living with and being supported by the worker.* The act of Congress therefore is inconsistent if Sections 209(m) and 202(c) (4) must be literally construed.

To give each section its function in construing the act as a whole, it is impossible to conclude that Congress intended under such facts as these disclosed in this record to deny such dependent children of a deceased worker the benefits of the act. Of course Congress wisely provided that no illegitimate child *not living with the worker and not being supported by him* can receive benefits; but the test here, which may be restated, is whether or not these children may have the benefit of the insurance of a worker who not only stood *in loco parentis* to them, living with them and supporting them, but who was also their natural father, which relationship was recognized by him in his proven will.

The marital contract with Spivey was broken when Mr. and Mrs. Spivey (later Ray) separated. The breach of the marital contract is the basis of a decree of divorce. Had Mrs. Ray, as Mrs. Spivey, married ceremonially or otherwise one man or several men, cohabiting with them for short periods of time, her status would be that of an adulteress or a concubine; but when she married Mr. Ray and lived with him continuously for fifteen years bearing five children by him, holding herself out as his wife, forsaking all others, and clinging only to him, it should be and is presumed that she was divorced from Mr. Spivey. This presumption of the law is best theoretically and factually. Especially is this true when children are born to a man and woman who lived as Mr. and Mrs. Ray did. It is best for society that the law presume as legal such a second marriage as is involved here. It is serious indeed when little children, born as these children were, are branded as illegitimate offspring or bastards. While the history of the world shows there have been many outstanding bastards, who have contributed much to their fellow men and the world, our laws, society, and our customs brand bastards as those with a stain upon their social standing, even though they are not responsible for their birth.

This case is an unusual one, and the undisputed proven good faith in the conduct of this illiterate mother should be given much consideration and should save her children from a stain upon their future lives.

Believing as this court does that Congress did not intend in its effort to protect the Social Security funds to bar such a mother and children as these from a claim upon those funds, this court holds that for the purposes of the Social Security Act, Mrs. Ray is the legal widow of the worker and her children are the legitimate children of the deceased worker, entitled to the benefits of the act. This is not a strained construction of the law, but, in my opinion, simple justice. An appropriate order has been entered.