Per Curiam:
This case was referred pursuant to Buie 57(a) to Trial Commissioner Marion T. Bennett with directions to make findings of fact and recommendation for con- *591 elusion of law. The commissioner has done so in an opinion and report filed on December 3,1964. Am election to submit on previously submitted objections and memorandum of law was filed on behalf of the third-party plaintiff Alvin B. Martin on December 30, 1964, an election to submit on commissioner’s report and proposed conclusions of law was filed on behalf of the plaintiff on December 31,1964, and defendant’s acceptance of the commissioner’s opinion and findings of fact was filed on January 4,1965. The time for filing exceptions and brief to the commissioner’s report pursuant to Rule 58 has expired and the case is submitted to the court without oral argument. Since the court is in agreement with Trial Commissioner Bennett’s findings, his opinion and his recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Plaintiff is entitled to recover and judgment is entered to that effect with the amount of recovery to be determined pursuant to Rule 47(c) (2). The petitions of the third-party plaintiffs are dismissed.
OPINION OP COMMISSIONER
The plaintiff, Amanda C. Yarbrough, instituted this suit for payment of death benefits which were allegedly due to her as the widow of Floyd Yarbrough, who died on January 6, 1955, having made contributions since 1940 to the retirement fund of the Civil Service Commission while employed by the Veterans Administration Hospital in Tuskegee, Alabama.
Under the Civil Service Retirement Act of 1930 (5 U.S.C. § 724(c) (1952)) an annuity is paid to the surviving widow of a deceased government employee who has rendered at least 5 years of service. Section 724(d) (1) defines the term “widow” as the “surviving wife of an individual, who either (A) shall have been married to such individual for at least two years immediately preceding his death, or (B) is the mother of issue by such marriage.”
In the event the employee dies without a surviving widow, no annuity is paid. Section 724(e) directs, instead, that a lump sum, consisting of the total amount of payments *592 deducted from the employee’s salary over the years be paid in the following order of precedence:
First, to any beneficiaries that the deceased employee may have designated in writing (inapplicable in this case).
Second, to the widow, without regard to the definition of this term in section 724(d).
Third, to the children of the employee.
Fourth, to his parents.
Fifth, to his executor or administrator.
Sixth, to other next of kin.
On April 1, 1957, the plaintiff filed her second claim with the Civil Service Commission for death benefits, stating that she was the widow of Floyd Yarbrough. On the application form, she indicated that the deceased had been married previously to a Mrs. Alvene Clark Yarbrough Leroy. In the space asking how this marriage had been terminated the word “divorce” was stricken through and the word “separation” typed above it. Plaintiff made errors in completing this form, as shown in the findings, and this casts doubt on the accuracy of what she said thereon about the alleged separation in lieu of divorce.
Plaintiff was subsequently notified by the chief of the claims section that no benefits would be paid out until Mrs. Leroy had been contacted and the status of her marriage to the decedent satisfactorily determined.
After the suit had been commenced here, the Government successfully moved to issue notice to Mary Lee Smith, Reginald Daniely, and Alvin Martin to appear as third parties and to assert their interests in the subject matter of the action. The three appeared through their attorneys, Mary Lee Smith claiming to be one of two daughters of the decedent by the prior marriage and Alvin B. Martin claiming to be the son of Lillie Mae Yarbrough, the other daughter of this marriage. Reginald Daniely, the son of Mary Lee Smith, has been dismissed as a plaintiff by consent of his attorney, as his interests derive solely through his living mother.
Mary Lee Smith and Alvin B. Martin, the third-party plaintiffs, assert that the decedent’s first marriage was the only valid marriage which was contracted during his life, and that they, therefore, are entitled to all funds on deposit *593 with the Civil Service Commission in the name of the decedent.
The central question is thus whether Amanda C. Yar-brough, the plaintiff, is the surviving “widow” of the deceased under section 724(d) (1) and the answer will depend on whether she was “married” to him for 2 years immediately preceding his death. The evidence and findings of fact establish that the first marrriage — the one between Alvene and Floyd Yarbrough — was a legal one taking place in South Carolina in 1916 and that from this union two daughters were born. One of the daughters is a third-party plaintiff and the son of the other and deceased daughter is also a third-party plaintiff here, as indicated above. There is no evidence based upon a search of court records to show that this marriage was not at some time legally dissolved by divorce.
Alvene went through another marriage ceremony about 1940 with a John Leroy. In the meantime, in 1918 or 1919, Floyd deserted his wife and children, moved to Alabama, and in 1926 married plaintiff Amanda Yarbrough. He lived with her until his death in 1955 and never communicated with his first wife or his children. He had no issue by the second wife. At the time of marriage, Amanda had a husband from whom a divorce decree was not final. Faced with this mixed-up situation the Civil Service Commission has wisely refrained from making any payments to any of the claimants until their rights are clarified.
In enacting section 724, Congress undoubtedly left the determination of whether an employee was married or not up to the laws of the individual states. Under traditional doctrine, a marriage is valid everywhere if the requirements of the marriage law are complied with in the state where the contract of marriage takes place. See Restatement, Conflict of Laws, § 121. In this case, the law of Alabama governs the capacity of the parties to enter into the contract of marriage in issue and determines the validity of the marriage of the decedent to the plaintiff. If this marriage is valid under the laws of that state, then Amanda C. Yar-brough is entitled to the annuity provided for in section 724(c).
*594 Under Alabama law, where a spouse repudiates the marital contract and marries another, followed by years of cohabitation, there is a very strong presumption that the later marriage, legal or common law, is valid, and that the prior marriage has been dissolved by divorce. Sloss-Sheffield Steel & Iron Co. v. Alexander, 241 Ala. 476, 3 So. 2d 46 (1941). In such cases, the burden of overcoming the presumption of validity attaching to the second marriage is cast upon the party questioning it. Ex parte Young, 211 Ala. 508, 101 So. 51 (1924); Sloss-Sheffield Steel & Iron Co. v. Alexander, supra; Matthews v. Matthews, 259 Ala. 332, 67 So. 2d 22 (1953). The claimant must not only show the fact of a previous valid marriage by one of the parties, but must also establish that such prior marriage has not been dissolved by divorce or death, notwithstanding that he is thereby required with difficulty to prove a negative. Ex parte Young, supra; Sloss-Sheffield Steel & Iron Co. v. Alexander, supra; Jordan v. Copeland, 272 Ala. 336, 131 So. 2d 696 (1961).
The plaintiff has made out a prima facie case for the validity of her marriage. She married the decedent on April 6, 1926, which was 2 days before her divorce from Eobert Fluel-lin became final. However, it is well settled in Alabama that if the parties marry in good faith when a legal impediment exists as to their marriage and they continue to cohabit as man and wife after the removal of the impediment to their lawful union, the law will presume an actual marriage immediately after the removal of the obstacle. King v. King, 269 Ala. 468, 114 So. 2d 145 (1959); Hill v. Lindsey, 223 Ala. 550, 137 So. 395 (1931); Smith v. Smith, 247 Ala. 213, 23 So. 2d 605 (1945). Thus, the presumption of validity of the latest marriage is brought into effect.
The presumption referred to just above is not an absolute one. It has its natural limitations and the Alabama Supreme Court has stated on numerous occasions that it should be applied with caution and discretion, yielding whenever the facts and circumstances of the case require a reasonable inference to the contrary. Freed v. Sallade, 245 Ala. 505, 17 So. 2d 868 (1944); Dorsey v. Dorsey, 259 Ala. 220, 66 So. 2d 135 (1953); Sloss-Sheffield Steel & Iron Co. v. Watford, *595 245 Ala. 425, 17 So. 2d 166 (1944); Bell v. Tennessee Coal, Iron & R. Co., 240 Ala. 422, 199 So. 813 (1941).
In Dorsey v. Dorsey, supra, and quoting from Fuguay v. State, 217 Ala. 4, 114 So. 898, 902, the Supreme Court of Alabama stated:
[5] There are no absolute presumptions of the dissolution of the first marriage state “in order to establish the innocence of the other party to a subsequent marriage”. In each case the question is one of fact “to be determined like any other question of fact, upon * * * the attending facts and circumstances, and such inferences as fairly and reasonably flow therefrom.”
The quantum and quality of the evidence needed to overcome the presumption can have no exact, universally applicable measure. Jones v. Case, 266 Ala. 498, 97 So. 2d 816 (1957). One rule does emerge, though, from the various Alabama cases which have dealt with this matter, i.e., that the uncorroborated testimony of one party to the prior marriage that he or she did not obtain a divorce is by itself insufficient to rebut the presumption the marriage was in fact dissolved. Jordan v. Copeland, supra. As this court has stated, in a case involving similar issues under California law, “* * * proof that one party to a former marriage has not secured a divorce is not proof that the other party * * * to such marriage has not done so.” Briggs v. United States, 116 Ct. Cl. 638, 652, 90 F. Supp. 135 (1950). Thus, it is incumbent upon the party seeking to prove that the earlier marriage was not dissolved to corroborate the fact that neither party obtained a divorce. The specific type and amount of corroborating evidence required will vary from case to case, but certain standards have developed.
In most cases an examination of the records of the divorce courts of all the counties where the parties had lived and where domicile for divorce could have been obtained has been held sufficient proof to rebut the presumption of dissolution of the prior marriage. This is considered very reliable evidence and is the most common method' employed. Bell v. Tennessee Coal, Iron & R. Co., supra; Sloss-Sheffield Steel & Iron Co. v. Watford, supra. See also Dorsey v. Dorsey, supra, where, in addition to a search of the records, *596 the refusal of the other spouse to the first marriage to testify was also taken into consideration as corroborating evidence. But see Ray v. Social Security Board, 73 F. Supp. 58 (Ala. 1947). In several cases the Alabama courts have held such a search of the records to have been a necessary ingredient of the proof that the other party did not obtain a divorce. Ashley v. Ashley, 255 Ala. 313, 51 So. 2d 239 (1951); Whitman v. Whitman, 253 Ala. 643, 46 So. 2d 422 (1950); Jordan v. Copeland, supra.
However, such record evidence of nondivorce has not been regarded as an indispensable element of such proof in every case. See Jordan v. Copeland, supra, 131 So. 2d at page 700. In one 1957 case, the Alabama Supreme Court upheld the discretion of the trial court which had held that the presumption of validity attaching to the later marriage had been successfully rebutted by other corroborating evidence, Jones v. Case, supra. The Jones case was a suit in equity by a widow against her deceased husband’s cousin for a decree granting her title to certain realty of the husband. The original parties were married in 1906 and separated in 1922. Twelve years later, after the wife had “married” another man, the first husband requested her to join him in executing a mortgage on the property in question. The court treated this fact as an acknowledgment on the part of the husband that he had not procured a divorce up to that time, since he apparently considered himself still legally married to her.
As additional corroborating evidence, the defendant-cousin had, after the death of the decedent, requested the wife to execute a quitclaim deed to the property in his favor. This the court construed as an admission on his part that the first marriage had indeed not been dissolved, and that the defendant-cousin believed the complainant to be the legal wife of the deceased at the time of his death. Thus, the •court decided that the acknowledgment of the decedent and the admission of the defendant were sufficient evidence, in the absence of a search of the records, to establish that no divorce had been decreed.
As has been stated previously, the presumption of the validity of the second marriage is indeed a strong one. *597 Sloss-Sheffield Steel & Iron Co. v. Alexander, supra; see also 14 A.L.R. 2d 7, et seq. It arises because the law will assume morality and legitimacy and that parties who have lived together as man and wife for a number of years do so legally. Thus, in order to rebut this presumption of validity, reliable and convincing evidence is required, but such has not been presented here. On the basis of the evidence at hand, it cannot be said that the marriage between Floyd and Alvene Yarbrough was not dissolved by divorce.
Although it would not have been possible for either party to have obtained a decree dissolving their marriage in South Carolina prior to 1949, since that State’s constitution specifically prohibited divorce,[2] it was entirely possible for the decedent to have procured an Alabama divorce at any time during his long residency there. The third parties here have made no attempt to search the records of any divorce courts, and except for the questionable admission by the plaintiff on her application for death benefits in 1957, there is no competent evidence to corroborate the naked allegation of the third parties that the first marriage was not in fact legally dissolved.
The great majority of cases in Alabama, and in most other states, have held a search of the court records to have been necessary. Only the Jones case, supra, has permitted other evidence alone to rebut the presumption of divorce. In that case there was, in addition to the admission of the defendant, an acknowledgment by the decedent that he considered himself still legally married to the complainant. Moreover, there was testimony to the effect that the parties continued to communicate with each other and to visit at regular intervals after their separation.
In the case at bar, the decedent never communicated with his first wife after 1918 or 1919 and did not thereafter consider himself still legally married to her. In fact, by subsequent marriages both Floyd and Alvene Yarbrough in effect declared that they were free to marry again. See Freed v. Sallade, supra; Jordan v. Cofeland, supra. The third parties here have thus failed to carry the strict burden that *598 the law casts upon those who would attack the validity of the latest marriage, and consequently the presumption that the first marriage was dissolved by divorce stands unassailed.
Thus, the plaintiff, Amanda C. Yarbrough, was the lawful “widow” of the decédent within the meaning and intent of section 724(c) and is entitled to receive the annuity provided for in that section.
FINDINGS OF FACT
1. Floyd Yarbrough who died on January 6, 1955, married Alvene Clark at Anderson, South Carolina, on October 19, 1916, and from this union two daughters were born, Lillie Mae and Mary Lee.
2. Lillie Mae Yarbrough was born on May 2, 1917, as evidenced by her birth certificate, naming Floyd and Alvene Yarbrough as the parents.
3. Third-party plaintiff Mary Lee Yarbrough Smith was born sometime in 1918 or 1919. No official record of her birth appears on file with the State of South Carolina, but Floyd and Alvene Yarbrough were living together at the time of probable conception, thereby raising the presumption that she was their legitimate child. She was raised by her mother and remained a member of her household until at least 1950.
4. Third-party plaintiff Alvin B. Martin was born out of wedlock to Lillie Mae Yarbrough, the older daughter, and a William Martin in Anderson, South Carolina, on April 22, 1933. Lillie Mae died on March 14, 1937, and Alvin was raised in the household of his grandmother, Alvene Yarbrough.
5. The decedent left his lawful wife and the two children sometime in 1918 or 1919, and never returned to them. He did not thereafter communicate with them at any time prior to his death some 36 years later.
6. There is no competent, corroborated evidence that either Alvene or Floyd Yarbrough did not obtain a divorce; No search has been made of divorce records in any of the counties where the parties have lived.
7. About 7 years after the separation from Alvene, the decedent entered into a marriage ceremony with Amanda *599 Coleman Yarbrough, the plaintiff, in Tuskegee, Alabama. This ceremony took place on April 6,1926, while the plaintiff was still legally married to a Robert Fluellin. Not until 2 days later, on April 8, did she obtain a divorce from Fluel-lin and that decree provided she could not remarry for 60 days.'
8. The plaintiff and the decedent continued to live together from the date of this second marriage until his death on January 6, 1955. No children were bom to them, and in his will the decedent nominated the plaintiff as the sole legatee and the executrix of his estate.
9. Sometime around 1940, approximately 21 years after the separation from her husband, Floyd Yarbrough, Alvene Yarbrough married a John Leroy. Although no evidence appears as to the exact time and place of the marriage ceremony, it is established that Alvene and Leroy lived together as man and wife, and she changed her name to his.
10. Alvene Yai’brough Leroy continued to live in Anderson, South Carolina, at all times until her death on April 20, 1961. She was survived by one daughter, third-party plaintiff Mary Lee Smith, and two grandsons, Reginald Daniely (the son of Mary Lee, who does not figure in the disposition of this case) and third-party plaintiff Alvin B. Martin, the son of her deceased daughter Lillie Mae.
11. This suit was instituted by Amanda C. Yarbrough for death benefits allegedly due her under the Civil Service Retirement Act of 1930, as amended, as the widow of Floyd Yarbrough who when he died was employed by the Veterans Administration Hospital, Tuskegee, Alabama, and who had made contributions to the retirement fund of the Civil Service Commission since June 1940 by deductions from his salary during his employment.
12. Prior to instituting this suit, plaintiff Amanda C. Yar-brough filed two claims, dated January 20,1955, and April 1, 1957, with the United States Civil Service Commission for death benefits. She indicated therein that she had married the deceased on April 7, 1926, at Tuskegee, Alabama; that she was the widow of the deceased; that the deceased had previously been married to Mrs. Alvene Clark Yarbrough Leroy which marriage was terminated by “separation” with *600 the word “divorce” stricken through on the official form used for the application to the Commission in 1957, and that she, Amanda, had previously been married to Robert Fluellin with that marriage terminating by death in September 1925. The date of the marriage of Amanda and Floyd Yarbrough and the date of death of Fluellin and the dissolution of marriage to him by death are not according to the best evidence.
13. On August 17, 1955, April 12 and May 15, 1956, and April 16, 1957, plaintiff was notified by the Civil Service Commission that no action could be taken on her claim until the status of decedent’s former marriage to Alvene Clark Yarbrough had been determined. On June 11, 1957, plaintiff’s attorney was given similar advice with the additional comment that Alvene Clark Leroy had not yet been heard from and that:
Settlement in this case must be made strictly in accordance with the provisions of the civil service retirement law. As stated in our March 20 letter we cannot consider your client as the person entitled to settlement.
No payment has been made to plaintiff by the Civil Service Commission.
14. After filing of the petition herein defendant moved for issuance of notice to third parties, naming Mary Lee Smith of Indianapolis, Indiana, Reginald Daniely of the same city, and Alvin Martin, United States Army, APQ 957, San Francisco, California. Defendant’s motion stated, inter alia, that plaintiff “by her own admissions to the Civil Service Commission and by her allegations in her petition * * * has raised a serious question about the legal status of her marriage to Floyd Yarbrough.” The motion was granted and the aforesaid parties through their attorneys appeared, were made third-party plaintiffs and have pleaded their claims and answered the claim of plaintiff. Mr. Daniely, however, was dismissed on motion of counsel as his rights, if any, are derivative from his mother, Mary Lee Smith.
15. The Civil Service Commission did not receive from Floyd Yarbrough prior to his'death a written designation of his beneficiary or beneficiaries to receive the lump sum composed of the money deducted from his salary. This sum *601 amounts to $2,112.92 as of the date of the employee’s death. The accrued annuity to a legal widow, if any, approximates $8,500.
ULTIMATE FINDING
16. The third-party plaintiffs have offered no competent evidence to corroborate the admission of plaintiff Amanda Yarbrough that the marriage of Floyd and Alvene Yar-brough may not have been terminated by divorce. There has been no search of the divorce court records. Alvene, the first wife, remarried before her death. The presumption of the validity of the last marriage of Floyd Yarbrough and plaintiff is substantially unrebutted on the record. Plaintiff Amanda Yarbrough was the widow of Floyd Yarbrough at the time of his death and his wife for 2 years prior thereto.
CONCLUSION OE LAW
Upon the foregoing findings of fact and opinion which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover and judgment is entered to that effect. The amount of recovery will be determined pursuant to Pule 47 (c) (2). The petitions of the third-party plaintiffs are dismissed.
In accordance with the opinion of the court and a memorandum report of the commissioner as to the amount due thereunder, it was ordered on May 28, 1965, that judgment for the plaintiff be entered for $9,447.20.

 South Carolina Constitution (1895), Article XVII, § 3.

 Third-party Reginald Daniely was dismissed by consent.